**Angela H. SIMON and Armando Simon, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–00512–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 10, 1987.

Buddy Stevens, Robert T. Rice, Angleton, for appellants.

Jim Maple, Brazoria County Dist. Atty., Jim Turner, Brazoria County Asst. Dist. Atty., Angleton, for appellee.

Before EVANS, C.J., and LEVY and DUNN, JJ.

EVANS, Chief Justice.

A jury convicted appellants, Armando Simon and his wife Angela H. Simon, of sexual assault of a child. The jury assessed Armando Simon's punishment at nine years confinement and Angela Simon's punishment at three years confinement, probated for five years. Both appellants bring this appeal from their respective convictions. We affirm both convictions.

Armando Simon does not challenge the sufficiency of the evidence to support his conviction. But Angela Simon does contest the sufficiency of the evidence, arguing that there is insufficient evidence to show that she, while "acting with intent to promote or assist the commission of the offense," solicited, encouraged, directed, aided, or attempted to aid either Armando or the complainant to commit the offense. See Tex.Penal Code Ann. sec. 7.02(a)(2) (Vernon 1974).

■ Angela Simon first contends that there is insufficient evidence to prove that she committed any "acts" of culpable conduct and second, that there is insufficient evidence, under the law of parties, to show that culpable intent attached to the proscribed act at the time the act was performed. In support of these arguments, she cites *Herring v. State*, 659 S.W.2d 391, 392 (Tex.Crim.App.1983), which involved a conviction for public lewdness based upon the defendant's "act" in allowing his genitals to be touched by complainant. In that case, the Court of Criminal Appeals reversed the conviction, holding that the State failed to meet its statutory obligation to prove an affirmative act of touching. See Tex.Penal Code Ann. sec. 6.01 (Vernon 1974 and Supp.1987).

In considering the sufficiency of the evidence, we are required to view the record in the light most favorable to the verdict, and we must sustain the conviction if we conclude that a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Sutherlin v.*

*State*, 682 S.W.2d 546, 549 (Tex.Crim.App. 1984). Applying this standard of review, we hold that the jury could reasonably have decided beyond a reasonable doubt that Angela Simon actively encouraged sexual contact between the complainant and the appellant's husband, Armando Simon.

Appellants resided in Angleton, Texas, where Armando Simon was employed as a psychologist with the Texas Department of Corrections. In February 1983, the complainant, then 15 years old, was introduced to the Simons by mutual friends who shared an interest in a game called "Dungeons and Dragons." The complainant thereafter often babysat at the Simons' and joined the Simons' social circle, whose members ranged in age from middle teens to early twenties, except Armando, who was in his early thirties. The group gathered frequently to play "Dungeons and Dragons" and other games, and also met to go swimming, crabbing, and on shopping trips. In May 1983, some of the group, on several occasions, attended "The Rocky Horror Picture Show" movie, a satire on horror movies shown at Houston theaters at midnight on weekends. When the group went swimming, a certain amount of "horseplay" generally took place in which the males, including Armando, threatened removal of the females' bathing suit tops and tube tops. In the summer of 1983, the Simons moved to another apartment in Angleton, and in the course of that move, some of the family photograph albums, which contained nude pictures, were displayed to the complainant and another member of the group. After that time, Armando's attentions to the complainant began to take on a more distinctly sexual character, starting with kissing and petting. About that same time, Angela Simon told the complainant that she, Angela, had an "open marriage" and that she wished to give Armando a "gift" of a virgin. She also commented about Armando's sexual activities and prowess.

There was testimony that Angela engaged in a continuing course of conversation with the complainant involving sexuality. On one occasion, after the trio engaged in a "strip blackjack" game, Angela openly invited the complainant to engage in sexual contact with Armando, placed the complainant's hand on Armando's penis, and then left the room. After Angela left the room, Armando continued to fondle the complainant until he reached a sexual climax. On a subsequent occasion, Armando performed cunnilingus on the complainant while the two were in an automobile, and during that episode, Armando was unable to achieve an erection. After returning to the Simons' apartment, Angela massaged Armando to an erection, and invited the complainant to have intercourse with him. When the complainant refused this invitation, the two Simons left the room and engaged in an argument. Angela then returned and informed the complainant that she would have to make a decision about having intercourse with Armando.

About two months later, in November 1983, Armando and the complainant engaged in their first act of sexual intercourse. Thereafter, Armando and the complainant engaged in intercourse on some 17 to 20 occasions at various locations. The last occasion was on June 6, 1984, the date of the offense upon which both convictions are based. Angela Simon was not present on any of the occasions when Armando had intercourse with the complainant.

There was testimony that tended to show that Angela Simon continuously discussed sexual activities with the complainant, particularly in respect to the complainant's sexual involvement with Armando Simon, and that Angela actively encouraged the complainant to have a sexual relationship with Armando. There was also testimony from another witness, an acquaintance of the Simons, that the Simons had admitted Armando's sexual relationship with the complainant, and that Angela later told the witness that the complainant was a "gift" to Armando.

Although Angela Simon denied any knowledge of an affair between her husband and the complainant and denied that the three had participated in the sexual activities described by the complainant, the jury was not bound to accept her testimo-

ny. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to prove affirmative conduct on the part of Angela Simon that constitutes a culpable act of aiding in the commission of the offense. Moreover, the evidence is sufficient to support the inference of her participation in the offense as a party. *See Freeman v. State,* 654 S.W.2d 450, 453–54 (Tex.Crim. App.1983); *Ex parte Prior,* 540 S.W.2d 723, 727–28 (Tex.Crim.App.1976). We also conclude that the testimony supports an inference that the culpable intent was attached to the proscribed act at the time the conduct was performed. *See Ely v. State,* 582 S.W.2d 416, 420 (Tex.Crim.App.1979); Tex.Penal Code Ann. sec. 7.02(a)(2).

Tex.Penal Code Ann. sec. 6.03(a) (Vernon 1974) provides:

A person acts intentionally, or with intent, with respect to the nature of his conduct or as a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Although Angela Simon was not present on the date of the act of the sexual intercourse for which both appellants were found guilty, the testimony supports an inference that the particular act of intercourse occurred, as did the preceding series of sexual contact, as a result of her intentional course of conduct and her conscious objective and desire to have the complainant engage in sexual intercourse with her husband. Thus, the jury was justified in concluding that Angela Simon had culpable intent that attached to the act of intercourse for which she and her husband were charged with the offense of sexual assault of a child.

We accordingly overrule points of error 25 and 26 of appellant Angela Simon.

■ We next consider the contentions advanced by both appellants, Armando and Angela Simon, that the trial court abused its discretion in denying their motions for severance.

Tex.Code Crim.P. art. 36.09 (Vernon 1981) provides, insofar as applicable here, that when two or more defendants have been jointly indicted for the same offense or an offense growing out of the same transaction, they may, in the discretion of the court, be tried jointly, and that either defendant may testify for the other or on behalf of the State, provided, "that in cases in which, upon *timely* motion to sever, and *evidence introduced* thereon, it is made known to the court ... that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other...." (Emphasis added.)

Under Armando Simon's points of error nine and ten, he contends that the trial court abused its discretion in denying his motion to sever, claiming that his defense was so antagonistic and prejudicial to Angela Simon's defense that a severance should have been granted. Particularly, he complains that "as the evidence developed," Angela Simon felt it necessary to take the stand and produce her diary, which had been excluded by the court in a pretrial suppression hearing. He argues that because the hearsay statements recorded in her diary tended to incriminate him, this made his wife a witness against him. He asserts that the trial court was aware, before the trial even started, that the diary might be an issue in the case and that the parties had asked to be tried separately, both before and during trial.

Angela Simon's points of error two, seven, eight, and sixteen similarly contend that the trial court abused its discretion in overruling her motion to sever, arguing that certain evidence admissible against her husband Armando, particularly photographs of her husband and nude women, made their defenses antagonistic to one another.

Both of the appellants' motions for severance are contained in the transcript. But neither the transcript nor the statement of facts contain any record of a pre-trial hearing on either motion. Thus, the appellants have not met their burden under article 36.09 of showing that their motions to sever were *timely presented* to the trial court and that *evidence was introduced* thereon.

*See Foster v. State*, 652 S.W.2d 474, 477 (Tex.App.—Houston [1st Dist.] 1983), *aff'd*, 693 S.W.2d 412 (Tex.1985).

The record reflects that the appellants asked the court for a severance at several points during trial, particularly when Angela Simon introduced excerpts from her diary and the State offered the photographs taken from Armando Simon's photograph album. In this latter respect, we note that neither motion to sever specifically mentioned the photographs. The record further shows that when either of the appellants objected to evidence on the ground that it was inadmissible hearsay as to such appellant, the trial court, in overruling the objection, cautiously instructed the jury that it should consider such evidence only as to the party against whom it was admitted. Although it cannot be said with certainty that the jury gave heed to these cautionary instructions, it is obvious that the court's instructions tended to lessen the prejudicial impact of the evidence.

A trial court has considerable discretion in deciding whether a joint trial would be so prejudicial to a particular defendant that a severance should be ordered. *Foster v. State*, 652 S.W.2d at 477. To establish an abuse of this discretion, a defendant has the "heavy burden" of showing *clear prejudice* resulting from the denial of a request for severance. *Morales v. State*, 466 S.W.2d 293 (Tex.Crim.App.1970). Thus, we are required to uphold the trial court's ruling in the present case unless the appellants have affirmatively shown that they were clearly prejudiced by the joint trial. *Sanne v. State*, 609 S.W.2d 762 (Tex.Crim. App.1980).

While the appellants suggest that their motions to sever were presented to the trial court for pretrial determination, they have made no affirmative showing that a hearing was actually held and that evidence was presented in support of their motions. Thus, we hold that appellants have not met their burden of showing that their motions were timely presented to the court and that evidence was offered in support of their motions, as required by article 36.09. *See Sanne v. State*, 609 S.W.2d at 775.

We further hold that appellants have not shown a clear abuse of discretion in the denial of their motions to sever during trial. Although the diary and photographs, and certain other evidence, which was admissible against one appellant and not the other, was arguably prejudicial to both parties, we cannot say that the defenses of Armando and Angela Simon were so clearly antagonistic that the trial court abused its discretion in proceeding with the joint trial. There was abundant other evidence from which the jury could have reached the same conclusions about the appellants' guilt, and when evidence was admitted that was hearsay as to one or the other of the appellants, the court, acting on counsel's objections, very carefully instructed the jury that their consideration of such evidence was limited to the party against whom it was admitted.

We accordingly hold that no abuse of discretion has been demonstrated, and we overrule the appellants' points of error complaining of the court's denial of their motions to sever.

We next consider the contentions advanced by Armando Simon that the trial court erred in allowing his wife, Angela Simon, to testify despite his objection, and in allowing her to introduce her diary into evidence. We also consider the related contentions advanced by Angela Simon that the court erred in allowing the prosecutor to cross-examine her on matters not raised during her direct examination.

■ Armando Simon argues that the testimony and diary of his wife were admitted in violation of former Tex.Code Crim.P. art. Tex.Code Crim.P. art. 38.11, ch. 399, sec. 2(A), 1965 Tex.Gen.Laws, *repealed by* ch. 685, sec. 9(b), 1985 Tex.Sess.Law Serv. 5140 (Vernon), (since recodified as Tex.R. Crim.Evid. 504), which essentially forbids one spouse from testifying against the other, and which affords each spouse the privilege of excluding confidential communication made during the existence of the marriage relationship. *Johnson v. State*, 95 Tex.Crim. 483, 255 S.W. 416 (1923). One spouse may testify as a witness for the other, but a spouse may testify against

another only in the narrow exception set forth in former article 38.11. *Young v. State,* 603 S.W.2d 851 (Tex.Crim.App.1980); (*see* Tex.R.Crim.Evid. 504, which became effective September 1, 1986, after this case was tried).

We conclude that the testimony of Angela Simon was exculpatory in nature, and although some portions of her diary raised an inference of Armando Simon's involvement with the complainant, we cannot say that her testimony or the excerpts from her diary substantially prejudiced Armando's defense. Indeed, Angela Simon's testimony tends to discredit the complainant's version of the case, and thus tends to exculpate both spouses with respect to the offense charged. Thus, we cannot say from the record before us that the trial court abused its discretion in admitting the testimony and diary of Angela Simon.

■ Neither does the record demonstrate that the trial court abused its discretion in permitting the prosecutor to cross-examine Angela Simon about various matters on which she was not directly examined. Armando Simon's discussion of these assertions relates only to the questioning of Angela about the dates of certain motel receipts, which arguably damaged Armando Simon's case. The appellate brief of Angela Simon does not discuss or argue how such cross-examination was prejudicial to her defense, and we find no error presented for review. For the reasons stated, we overrule Armando Simon's points of error 11 and 12 and Angela Simon's points of error 20, 21, 22, and 23.

■ We next consider appellants' contentions that the trial court abused its discretion in requiring their respective trial counsel to introduce and call all witnesses offered by them in-camera regarding the complainant's prior sexual conduct.

During the presentation of her defense, Angela Simon offered certain testimony regarding the complainant's prior sexual conduct. To determine the admissibility of such testimony, the trial court conducted two in-camera hearings pursuant to the provisions of former Tex.Penal Code sec. 22.065, ch. 203, sec. 3, 1976 Tex.Gen.Laws 477, *repealed by* ch. 685, sec. 9(b), 1985 Tex.Sess.Law Serv. 5140 (Vernon), (since recodified as Tex.R.Crim.Evid. 412). At the hearings, Angela Simon offered witnesses who testified about the prior sexual activity of the complainant. Three of the witnesses testified that they had sexual intercourse with the complainant. On the basis of the cumulative weight of the testimony, the trial court ruled that the evidence should be admitted before the jury. Later, during the course of the presentation of evidence, Angela Simon elected not to offer the testimony of one of the three witnesses who claimed to have had sexual intercourse with the complainant. The trial court stated that it did not find two sexual acts to constitute sexual promiscuity. The trial court then ruled that unless all three witnesses testified, evidence on the issue of promiscuity would not be admitted. On appeal, the appellants contend that the trial court abused its discretion in making that ruling because it denied them effective assistance of counsel and required them to be controlled by the court's decision about what evidence should be heard by the jury. In order to comply with the court's ruling, the appellants called one particular witness to the stand who, they contend, was a "terrible witness" and was harmful to their defense.

Although former section 22.065 did not specifically authorize the type of ruling that appellants complain of here, it did indicate that the court would determine what evidence is admissible and limit the testimony offered. The clear purpose of the statute is to protect a victim of a sexual offense against needless and unnecessary harassment by testimony about prior sexual conduct. *See Allen v. State,* 700 S.W.2d 924, 928–30 (Tex.Crim.App.1985). Under the particular circumstances shown, we cannot say that the trial court abused its discretion in ruling that the evidence on the issue of promiscuity would be admissible only on the testimony of all three witnesses. We accordingly overrule point of error 17 of Armando Simon and point of error 24 of Angela Simon.

█ Both appellants also contend that the trial court abused its discretion in admitting certain testimony by various state witnesses that related conversations between such witnesses and either Armando or Angela Simon, as well as in admitting Angela's diary excerpts. They contended that all such testimony was hearsay about one of the appellants. Testimony regarding such conversations was admitted as admissions against interest by a party, as recorded recollections of events, and as present sense impressions. *See* Tex.R. Crim.Evid. 801(e), 803(1) and (5). On each occasion that such evidence was admitted, the court instructed the jury that their consideration of such evidence was limited to the defendant against whom it was offered and to the issue for which it was offered.

Specifically, Armando Simon complains of testimony of the complainant relating to a conversation between her and Angela Simon about whether the complainant was using any type of birth control. In another instance, the complainant was permitted to testify about her conversation with Angela regarding Angela's desire to give Armando a gift of a girl, and that she, Angela, and Armando were free to seek out other sexual partners. Another witness testified that Angela told her that Armando "got Debbie naked" but that Debbie "chickened out" at the last moment and that Armando knew many back alleys and housing developments to go to and "things like that." A third witness, a minor at that time, testified that Angela asked her to be Armando's Christmas present.

Angela complains specifically of testimony by the complainant regarding conversations between the complainant and Armando about flowers he sent her under an assumed name and of testimony by another witness relating conversations between the witness and Armando. Appellants contend that the trial court's instructions were ineffective in preventing the harm necessarily resulting from this testimony. But the trial court very clearly instructed the jury that it should consider the testimony only against the appellant against whom the evidence was obviously admissible. We

conclude that no abuse of discretion is shown. We accordingly overrule points of error five, six, seven, eight, and thirteen of appellant Armando Simon and points of error six, nine, ten, and thirteen of appellant Angela Simon.

█ Neither do we consider that the trial court abused its discretion in admitting into evidence appellants' photograph albums that contained pictures of nude women and Armando Simon. Appellants contend that these albums showed extraneous matters that were not relevant to any material issue in the case, and that they were inflammatory and prejudicial to their defense. We overrule these contentions. The albums were admitted as evidence of the means used by appellants, one of whom was a trained psychologist, to arouse the complainant's sexual curiosity and to reduce her resistance to sexual contact. Thus, the photographs were offered as evidence of an overall criminal design. *See Johnson v. State*, 650 S.W.2d 784 (Tex. Crim.App.1983). It was the trial court's prerogative to determine whether the probative value of the evidence was outweighed by its prejudicial effect. The court overruled the objection to the photographs and admitted them into evidence. We hold that the appellants have not shown a clear abuse of discretion in the court's ruling. *Williams v. State*, 535 S.W.2d 637, 639–40 (Tex.Crim.App.1976).

We accordingly overrule Armando Simon's points of error one through four and Angela Simon's points of error one, three, four, and five.

█ Armando Simon contends in points of error 14, 15, and 16 that it was error for the trial court to permit the State to cross-examine Angela Simon beyond the scope of her direct examination. Specifically, Armando complains about questions concerning dates of motel receipts and details of "The Rocky Horror Picture Show." The complained of questions relate to matters that were referred to in Angela Simon's direct testimony. A defendant's wife may be cross-examined on matters about which she testified on direct examination, and

also regarding matters that are germane and pertinent to her direct testimony, but that were not specifically brought out on direct examination. *Mitchell v. State*, 517 S.W.2d 282, 287 (Tex.Crim.App.1974). Here, the cross-examination did not bring out any new and incriminating evidence against Armando Simon. We overrule Armando Simon's points of error 14, 15, and 16. *See Firo v. State*, 654 S.W.2d 503 (Tex.App.—Corpus Christi), *aff'd*, 657 S.W.2d 141 (Tex.Crim.App.1983).

■ Angela Simon contends in seven points of error that the trial court erred in allowing the State to introduce testimony about her character and in failing to grant a mistrial because of such testimony. The record reflects that the initial testimony regarding Angela Simon's alleged bi-sexuality was limited by the trial court as res gestae to her disclosure of the affair between her husband and the complainant. When the prosecution later attempted to make use of testimony about Angela's alleged bi-sexuality to impeach her, the court sustained her objection, sharply admonished the State's attorney, and took Angela Simon's motion for mistrial under advisement. The court then denied the motion for mistrial but gave express instructions to the jury to disregard the testimony.

Error in the admission of improper testimony may usually be cured by timely objection and an instruction to the jury to disregard the evidence. *Franklin v. State*, 693 S.W.2d 420 (Tex.Crim.App.1985). Here, we find that the court's action cured any error. Accordingly, we overrule Angela Simon's points of error 11, 12, 14, 15, 17, 18, and 19.

The judgment of the trial court is affirmed.

LEVY, J., dissents.

LEVY, Justice, dissenting.

I respectfully dissent from the majority's disposition of the appellant's contentions regarding the severance issue. Armando Simon, by his ninth and tenth points of error, and Angela Simon, by her second, seventh, eighth, and sixteenth points of error, contend that the trial court erred in refusing to grant their motions for severance. I agree and would reverse both convictions.

The record before us does not contain a transcript of any pretrial hearing on appellants' motion for severance. Thus, it could be argued, as the majority holds, that the severance complaints were waived, because there is no showing that evidence was presented in support of the motions to sever *before* the trial commenced. *See* Tex. Code Crim.P. art. 36.09 (Vernon 1981). But the majority ignores the critical fact that the State does not contend now, nor did it contend at trial, that the complaints were waived, and both motions to sever were urged and frequently reurged, *without objection*, during the course of the two-week joint trial. The record reflects that both the trial court and the State were fully aware of the contents and nature of the motions to sever, and, as evidence was adduced and the motions were reurged, the court continuously considered the motions presented. At no point did the trial court complain that it did not have enough evidence on the motions before it, pursuant to art. 36.09, Tex.Code Crim.P. For the majority to overrule the appellants' severance complaint on this tenuous ground, which the State itself did not urge, is a triumph of formalism over substantive due process. During the latter stages of the guilt phase of trial, the court finally overruled both motions. The record indicates that the trial court did not overrule the motions on the ground that they were untimely, or that it had heard no evidence, but rather because the circumstances did not require separate trials. I will consider the appellants' respective motions for severance, therefore, in the light of the evidence in the record at the time they were denied during trial.

In their motions to sever, both appellants essentially assert that their defenses are so antagonistic that a joint trial would be prejudicial and unfair. Angela Simon's motion asserts that most of the alleged sexual incidents concern only Armando Simon's activities and that her defense would be prejudiced by evidence relating solely to

those incidents. Armando Simon's motion alleges, *inter alia*, that a joint trial would be prejudicial because Angela Simon's diary, if admitted into evidence, would be considered by the jury as Angela Simon's confession that *both* appellants participated in sexual activities with the complainant.

A portion of the diary written by Angela was admitted in support of her defensive theory that she was not a party to the offense, and that she was not aware of any sexual relationship between her husband and the complainant. Her testimony attempted to explain statements made in the diary as the product of a wife's emotional state of jealousy of the attention being paid to the complainant, and her distress at a perceived diminished attention to herself. She testified in effect that she did not know of any sexual liaison between her husband and the complainant, and that she believed that no such relationship existed. However, the diary statements themselves, admitted into evidence, are equally subject to the interpretation that such a relationship in fact existed and that she was aware of it. Although her testimony tended to exculpate both defendants, the statements in the diary—hearsay as to Armando, beyond any question—could reasonably be read as directly implicating Armando in the offense for which they were both charged. *See United States v. Romanello*, 726 F.2d 173, 179 (5th Cir.1984).

Another instance demonstrating prejudice to both parties was the admission of certain photograph albums. These albums contained a number of pictures of nude, unidentified females, described as Armando's former girlfriends before his marriage. Some of these pictures also depicted Armando nude, engaging in sexual conduct with various females. Later pictures included Angela semi-nude. Two pictures displayed Angela and another nude woman, and one picture portrayed them in a position suggesting sexual conduct between the two. The albums were admitted as evidence of the means used to induce the complainant, who testified that they had made her curious, eventually to engage in sexual relations with Armando. Although I tend to agree with the trial court's threshold determination that the evidence was relevant, albeit peripherally, to the question of inducement, and thus pertinent to the charge against Angela under the law of parties, the probative value of the pictures appears to be slight compared to the subtle but influential prejudice caused in the course of trial by their admission. *Cf. Lewis v. State*, 676 S.W.2d 136, 140 (Tex.Crim.App.1984). None of the pictures are alleged to protray underage or non-consenting women, which would tend to make Armando's commission of the offense more probable. *See, e.g., Williams v. State*, 662 S.W.2d 344, 347 (Tex.Crim.App.1983). The pictures are, perhaps, not inflammatory, but I think it fair to say that they are prejudicial.

However, of more serious concern is the potential inflammatory effect caused in particular by the photographs of Angela with another woman. In the course of trial, the prosecutor introduced hearsay testimony that Armando had told a third party that his wife was a bisexual and "that she once got a feather up her nose and had to go to Houston."[1] An objection was sustained on the basis that such hearsay was irrelevant, and the court gave an instruction to the jury to disregard the statement.

Later in the course of trial, the subject again arose. Angela testified that she was not bisexual and attempted to explain that the picture was taken at a moment when she was trying to climb over the woman to escape the camera. On cross-examination, the prosecutor attempted to impeach Angela by questions regarding alleged homosexual activities with other women, subsequent to the arrest for the instant offense. The questions were, at first, permitted for

---

1. The trial record suggests that this statement was interpreted figuratively to mean, in essence, seized of an impulse or desire, arising from bisexuality, which was somehow alleviated by a trip to Houston. On the contrary, the briefs suggest a literal interpretation of removal of a foreign object at a Houston hospital; however, the jury was not privy to the latter interpretation.

the limited purpose of determining credibility. Further objections were sustained, and one instruction to disregard was given. In a lengthy conference out of the presence of the jury, the trial court observed the pre-existing link with the photographs introduced by the State. The court also observed that the prosecutor was introducing evidence of dubious relevance that was "inflammatory as hell," at the risk of "trying everybody's character in this case." The trial judge clearly stated his reasons for sustaining the defense objection to the prosecutor's questions about homosexual activities, *but no instruction appears to have been given to the jury when it returned.*

The trial record demonstrates that the appellants' concerns that a joint trial would be prejudicial were justified. A great deal of the evidence presented by the State did relate solely to the sexual activities of the complainant and Armando Simon, *all of which occurred outside the presence of Angela Simon.* Also, when Angela Simon offered her diary into evidence, to show that she had not voluntarily encouraged the complainant to become sexually involved with her husband, her memoirs were moderately exculpatory as far as she was concerned, but they clearly constituted prejudicial hearsay as to Armando Simon, tending to show his sexual involvement with the complainant.

I recognize that the trial court's ruling, which denied both motions for severance, must be upheld unless a clear abuse of discretion is shown. *Robinson v. State,* 449 S.W.2d 239, 240 (Tex.Crim.App.1969). The appellants are required to clearly demonstrate that they were prejudiced in order to establish an abuse of discretion. *Foster v. State,* 652 S.W.2d 474, 477 (Tex.App.— Houston [1st Dist.] 1983), *aff'd,* 693 S.W.2d 412 (Tex.Crim.App.1985).

The record indicates that the trial court gave thoughtful and continuing consideration to the appellants' motions for severance, and that the court earnestly tried to prevent prejudice to one or the other of the appellants, by frequently giving admonitory instructions to the jury. Thus, the question presented is whether the record, *considered in its entirety,* shows that notwithstanding these instructions, the jury was probably unable to keep separate the evidence relevant to each of the appellants and to render a fair and impartial verdict as to each of them. *See United States v. Welch,* 656 F.2d 1039, 1053–54 (5th Cir. 1981).

Considering all the circumstances before us, I conclude that the record does demonstrate such prejudice and that both convictions should be reversed. My conclusion is not based on any single portion of the case, but on the *cumulative* effect of various testimony and evidence presented. Under the cumulative effect of various statements by one defendant against the other and of evidence directed against only one or the other defendant, but not both, the admonitory instructions may well have lost their meaning and effectiveness. A very substantial probability exists that the evidence of the offense charged became submerged and confused in the evidence of an unusual sexual lifestyle, to the extent that a fair and impartial determination of the guilt or innocence of either defendant was adversely affected.

Nowhere is this probability more clearly illustrated than in the following portion of the prosecution's final argument:

Members of the jury, there's no better example, none whatsoever, of the openness of this particular marriage as it dealt with the topics of sexuality as these photo albums did. That is indicative, that is reliable evidence of how they felt about sex and sexuality and the place it had in their lives. Its place is among the photographs of friends, relatives and events, that's the place that it occupies, and I'm not singling it out just because it exists, I'm singling it out to provide you with evidence of the intent, from the evidence, of the continuing course of conduct of Armando and Angela Simon and you know that, you knew it when you saw the photographs the first time. You knew what kind of people you were dealing with when you saw that and you know it's trash and it's trash that doesn't

belong in a photo album with other family pictures.

There's been a great deal of cross-examination and even some argument about love and sex, passion and sex, I guess that ignores the many marriages in our community where sex is involved, but there's no longer any love and I have another fear about promiscuity; if you look at the Court's charge, it's [sic] connates [sic] consenting to sexual intercourse with a variety of partners. Where does a separated and divorced woman or man fit in? Are they promiscuous?

The phrase, "Normal jealous wife" was used. I submit, members of the jury, that we are not dealing with the normal man or woman standard. I submit that, from the evidence in this case, that you cannot apply—you cannot apply what is normal, what is accepted, what you normally accept as standards of conduct. You cannot apply that to Angela and Armando Simon because of the evidence in this case. It doesn't apply. The photo albums are concrete proof that the defendants don't treat the act of sexual intercourse and they don't treat nudity in the same light as you and I, the normal person. You and I, the normal person, they give it more significance, more special treatment in their minds than you or I.

They're are [sic] not held—the photographs are not held in the same regard as you and I. Wouldn't it be the normal person's standard, the normal person's course of conduct, to take that picture of Armando and who else, and those two persons, Angela and that other female who were escaping from the camera and if you truly do not want anyone to see it, you put all of them in one particular album where you are certain no one will handle it or see it or knows where it is, but you don't sprinkle it throughout your family albums.

And trying to analyze, not only before trial, but in trying to analyze all of the evidence presented, I submit that, from the facts, it is clear that we really are dealing with totally, a lifestyle of Angela and Armando Simon that is reflected in the albums, the gag gifts, the cards, the teenaged girls, the games they played with teenagers and the deviations, their favorite movies, their fantasies, they permeated their entire lifestyle and helps you decide specifically and accurately what their intent was when they involved themselves with D_____ to the very end. It helps you to do that and you do not have to be ignorant of that, you do not have to ignore it and you do not have to assume that if you single out each of the other items, that it simply washes away the ugliness in this particular trial and a lifestyle that's not normal, a lifestyle that's not accepted.

\*　　\*　　\*　　\*　　\*　　\*

It's [gone] the other way. It cuts the other way. There's a burden, but you know, there's a burden far higher than the burden I have, beyond a reasonable doubt. If you want to know that burden, it's the burden to be truthful. It's not in the Court's charge, but when you get over here to this lady and you raise your right hand and you swear to God to that oath, that burden is a lot higher than mine and I submit too, Angela Simon didn't make it. I submit that the Bible to [sic] Angela and Armando Simon lived by is the photo albums, that's the truth they swear by, that's the truth they use to encourage young girls in our community to involve themselves in—

[DEFENSE COUNSEL FOR ANGELA SIMON]: Your Honor, I'm going to object to him talking about young girls. The indictment talks about D_____ H_____ and I object to him going outside the record in that regard.

THE COURT: I overrule that. Go ahead.

[PROSECUTOR]: That's their truth and that's the truth that's woven into the fabric of their existence just like the threads that are engrained, that generally pulls everything and holds everything together, whether it be Christmases that you recall as I do, or gag gifts, or photo albums or diary writings; that's the threads by which they exist, it's the axis

by which their world turns and I didn't create it and you didn't create it.

As illustrated, the cumulative admixture of prejudicial facts relating to the sexual lifestyle of the appellants, and the specific accusation of appellants' sexual assault of a child, so blurred the actual legal issues in the case, and the defense of each appellant became so antagonistic to the other, as to deprive each appellant of an independently fair and impartial trial. I conclude that this calculated confusion so significantly undermined the reliability of the factfinding process as to vitiate the fundamental fairness of the trial.

The record shows that during the course of trial, it became increasingly difficult, if not impossible, for the jury to collate and appraise the independent evidence against each defendant, solely upon that defendant's own acts. It seems equally highly improbable that the jury was able to keep separate the evidence relevant to each defendant, and not relate it to the co-defendant, so as to be able to render a fair and impartial verdict as to each defendant, independently. *See United States v. Welch,* 656 F.2d at 1053–54. The record demonstrates such clear and harmful prejudice to both defendants that an abuse of discretion is shown, requiring me to dissent from the majority's refusal to sustain Armando Simon's points of error 9 and 10, and Angela Simon's points of error 2, 7, 8, and 16.

In other points, the appellants contend that the court erred in allowing Angela Simon to introduce her diary into evidence over Armando Simon's objection; in unfairly imposing upon the appellants' counsel an election, either to call all three defense witnesses examined by the court in-camera regarding complainant's prior sexual activity, or suffer a ruling that none of the witnesses would be permitted to testify; in admitting prejudicial conversations by third-party witnesses with Armando or Angela Simon, that constituted hearsay as to one or the other appellant; in admitting into evidence photograph albums containing pictures of Armando Simon and nude women, that were not relevant to the issues in the case; and in permitting the State to go into matters on cross-examination that were beyond the scope of the direct examination and that allegedly prejudiced the appellants' cases.

The *cumulative* effect of these matters, when considered in light of the circumstances relating to the appellants' motions to sever, obviously created a trial atmosphere that was prejudicial to both appellants, and thus is related to the fundamental issue of whether the appellants received a fair and impartial trial. In my judgment, the refusal of the trial court to grant the severance generated such confusion, prejudice, and irrelevance as to contaminate the entire trial beyond remedy.

Considering the prosecutor's incendiary summation, it seems appropriate, but perhaps trite, to observe that we must fastidiously preserve the distinction between sin and crime at peril of losing our secular democracy. The Texas judicial system does not consist of ecclesiastical tribunals established or operated to preserve traditional lifestyles, social and theological orthodoxy, or to punish sin or heresy, but rather of secular courts committed to the pursuit of justice by application of the law, through rules of evidence, in fair and impartial trials. Reprehensible or shocking conduct should be condemned in any civilized society, certainly, but it is not *ipso facto* punishable unless specifically defined as criminal by our Penal Code. Sexual assault of a child should be and is clearly criminal, whereas "hedonism" is not, and the line between the two cannot constitutionally be blurred. It is specific crime, precisely defined, not hedonism or sin or unorthodoxy, that our Texas courts are authorized to adjudicate and punish.

For the reasons stated, I would reverse the judgment of the trial court and remand the cause for a new trial.