Affirmed and Memorandum Opinion filed February 20, 2003















Affirmed and
Memorandum Opinion filed February 20, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01175-CR

____________

 

HAMPTON MULL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

 

On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 870,807

 

 

 

M E M O R A
N D U M   O P I N I O N

            Appellant,
Hampton Mull was convicted of sexual assault. 
After finding him guilty, a jury assessed punishment at seven years
probation.  The trial court imposed 600
hours of community service, boot camp, and $5,000 in restitution, as special
conditions of the probation.  In two
issues, appellant contends the evidence was factually insufficient to sustain
his conviction and that the trial court erred in denying his motion to sever
his case from that of two co-defendants. 
We affirm.

 








I.  Sufficiency of the Evidence

A.  The Evidence

            In
his first issue, appellant contends the evidence is factually insufficient to
sustain the verdict.  We begin our discussion
with a summary of the events of the night in question. 

            The
complainant was a twenty-year-old student at Texas Southern University.  On the night of February 27, 2001, she consumed some
alcoholic beverages while at a party with friends.  Later that night, she was talking with a
group of people in a common area at TSU between the men’s and the women’s
dormitories.  According to several
witnesses, she acted and spoke in a sexually provocative manner toward two men
at that time, Donte Duplechain
and Michael Thomas.  The complainant,
however, denied such conduct. 
Subsequently, she said that she wanted to go to her dorm room, Donte agreed to escort her there.  However, he and Michael Thomas instead took
her to the men’s dorm.  She was led to a
bedroom, and she sat down on a bed before she realized she was not in her own
room.

            Three
males, all co-defendants in the trial court, each had intercourse with
complainant in succession.  Michael
Thomas was the first to have intercourse with complainant that night.  Complainant testified that during
intercourse, she told him that she “didn’t know him like this” and told him to
“stop.”  Michael Thomas also testified,
giving the impression that the sex was consensual.  The jury acquitted Michael Thomas.  The second male was Vashawn
Thomas.  The complainant testified that
she did not know Vashawn and that he did not say
anything to her before getting on top of her. 
She said that when she said “no” and “stop,” someone in the room said,
“shut her up,” and Vashawn put his hand over her
mouth.  She said at this point her body
froze and she knew that regardless of what she said or did they were “going to
do whatever.”  The third male was appellant,
Hampton Mull.  Complainant testified that
as soon as Vashawn got up, appellant got on top of
her.  There was no conversation between
appellant and complainant before he penetrated her.  She began to cry and told him to “stop” a few
times.  A couple of witnesses testified
that after each time she said “stop,” she followed it by saying, “I’m
alright.”  At least one witness heard
someone in the room tell the appellant, “that’s not cool.”  Finally, complainant said, “stop” real loud
and appellant stopped.  Complainant then
got off the bed, gathered her clothes, and was escorted out of the room by a
male friend who had come to look for her. 
The friend testified that the complainant said to him, “I’m sorry” and
that she did not know what had happened.

            Complainant
went to her dorm room, called a different friend, and told him she had been
raped.  Later, when she went outside to
meet with the friend who had escorted her from the men’s dorm, appellant
confronted her and said, “Who am I?  Did
I do anything to you?” and asked her if she wanted him to call the police.

B.  Standard of Review

            In
reviewing the factual sufficiency of the evidence, we set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  We
consider all of the evidence in the record and not just the evidence which
supports the verdict.  Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 
The court is authorized to disagree with the jury’s determination, even
if probative evidence exists which supports the verdict.  Clewis, 922 S.W.2d at 133. 
However, a factual sufficiency review must be appropriately deferential
to avoid substituting the appellate court’s judgment for that of the fact
finder or substantially intruding upon the jury’s role as the judge of the
weight and credibility of testimony.  Johnson, 23 S.W.3d at 7.  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury’s determination
concerning the weight given to contradictory testimony.  Id. at 8.

C.  Analysis

            A
person commits a sexual assault if he penetrates a female’s sexual organ by any
means without consent.  Tex. Pen. Code Ann. § 22.011(a)(1)(A) (Vernon Supp.
2002).  The indictment charged that
consent was lacking because appellant forced complainant to submit by the use
of physical force or violence. 
Appellant’s position is that the evidence is factually insufficient both
because the evidence of the use of physical force was so weak as to undermine
confidence in the verdict and because the evidence of physical force was
greatly outweighed by contrary evidence. 
See Johnson, 23 S.W.3d at 11
(explaining requirements of showing factual insufficiency).  The key evidentiary points cited by appellant
in support of his position are: (1) there was no evidence he applied physical
force to complainant; (2) there was no evidence complainant physically resisted
appellant; (3) complainant said, “I’m alright” after saying “stop”; (4)
complainant was moaning during the encounter; (5) several witnesses who
observed the events testified that they did not believe an assault was taking
place; and (6) complainant said, “I’m sorry, I’m sorry” to her friend who came
to look for her.

            We
find appellant’s first argument, that there was no evidence of physical force,
to be unsupported by the record. 
Complainant testified that appellant got on top of her without her
permission and continued to lay on her and penetrate her after she told him to
stop.  This is sufficient evidence that
he applied physical force to sexually assault complainant.  See
Gonzales v. State, 2 S.W.3d 411, 415 (Tex. App.—San Antonio 1999, no pet.)
(stating that “[t]here is no requirement that a certain amount of force be
used, only that it is used.”).[1]  Regarding complainant’s alleged failure to
physically resist appellant, there is no requirement that a rape victim
physically resist her attacker in order to establish that a rape occurred.  See,
e.g., id.  Regardless, having already
been subjected to a sexual assault by at least one man, and with a crowd of men
around her, complainant may have been unable to physically resist or she could
reasonably have felt that such resistance would have been futile.

            Although
there is testimony in the record supporting appellant’s third argument, that
complainant said, “I’m alright” after she told appellant to “stop,” there was
no evidence that she said she was alright after each time that she said
“stop.”  Complainant herself said that
she told appellant to stop “numerous times,” finally saying it loudly, to which
he responded, “Oh, so you want me to stop.” 
Based on this evidence, the jury could have reasonably believed that
complainant told appellant to stop several times before he did finally stop.  The jury could also have interpreted the “I’m
alright” comment as something other than permission to continue.  Indeed, the fact that she was crying during
the encounter suggests that the statement, if made, was not tantamount to
permission to continue.

            Fourth,
the testimony that complainant was moaning could have been interpreted by the
jury, in light of the circumstances, as produced by pain or by horror at what
was happening to her.  Although two
witnesses described the moans as the “normal” or “regular” sounds of a woman
having sex, the jury could well have discounted their testimony because they
were present at the scene of the crime and failed to intervene and they were
friends, or at least acquaintances, of the defendants.  These factors suggest they may have had a
bias favoring the defendants.  See Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (stating that the jury, as
judge of the credibility of witnesses, was authorized to believe or disbelieve
all, none, or any part of the testimony of any witness).  For the same reasons, the jury could have
discounted the testimony raised in appellant’s fifth contention, suggesting
that observers thought nothing illegal was occurring.  This testimony is further called into
question by the testimony that someone said, “that’s not cool,” while appellant
was having intercourse with complainant.

            Lastly,
the evidence that appellant allegedly said, “I’m sorry” to her friend who came
to look for her does not change our analysis. 
If she said this, she may have meant that she was sorry that the incident
had occurred, or given the events of the night, she may have been incoherent by
that point.

 

            In
sum, we find appellant’s evidentiary arguments without merit and further find
the evidence factually sufficient to sustain the conviction.  Appellant’s first issue is overruled.

II.  The Denial of Severance

            In
his second issue, appellant contends the trial court erred in denying his
motion to sever his prosecution from that of his co-defendants.  He specifically argues that his case was
prejudiced by the joint trial because: (1) the evidence of physical force being
used against the complainant by the co-defendants prejudiced his defense; (2)
he and his co-defendants relied on inconsistent defenses necessitating
severance; and (3) he was harmed by the admission of a nontestifying
co-defendant’s statement.

            A
trial court must grant a severance if a joint trial would be prejudicial to any
defendant.  Tex. Code Crim. Proc. Ann. art.
36.09 (Vernon
1981).  The determination of whether a
joint trial would be prejudicial is within the sound discretion of the trial
court.  Simon v. State, 743 S.W.2d 318, 322 (Tex. App.—Houston [1st Dist.]
1987, pet. ref’d); see also Mulder v. State, 707 S.W.2d 908,
915 (Tex. Crim. App. 1986) (analyzing claim of
prejudice in severance case under abuse of discretion standard).  The denial of a motion to sever will
constitute an abuse of discretion only when the movant
satisfies the heavy burden of showing “clear prejudice.”  King v.
State, 17 S.W.3d 7, 16 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d); Louis v. State, 825 S.W.2d 752, 757 (Tex. App.—Houston [14th Dist.]
1992, pet. ref’d).

A.  Evidence of Physical Force

            Appellant
contends he was unfairly prejudiced because the evidence demonstrated that the
other co-defendants used physical force whereas he did not.  He suggests that complainant’s testimony that
she tried to push Michael Thomas off, but it didn’t work, and that she was more
aggressive with Vashawn Thomas, but he put his hand
over her mouth, could have led the jury to hold appellant responsible for his
co-defendants’ use of force.  He claims
that this testimony was particularly prejudicial in light of complainant’s
failure, when directly asked, to describe the physical force used by appellant.

            We
begin by noting that the premise of appellant’s argument is faulty.  As discussed above under issue one, the
evidence is sufficient to support the conclusion that appellant himself used
physical force in assaulting complainant. 
Therefore, the jury did not need to rely on the physical force of the
other defendants in order to find him guilty of using force.  During voir dire,
the judge was careful to impress upon the prospective jurors that the State had
to prove the case against each defendant independently and that the jury had to
make an individual determination as to guilt for each defendant.  Later, immediately before reading the charge,
the judge reiterated that the jury was required to make an independent verdict
as to each defendant.  In the absence of
evidence indicating the jury failed to do so, we presume they followed the
instructions of the trial court.  Lusk v. State, 82 S.W.3d 57, 61 (Tex.
App.—Amarillo 2002, pet. ref’d) (concerning
instruction to disregard testimony); Weatherby v. State,
61 S.W.3d 733, 738 (Tex. App.—Fort Worth 2001, pet. ref’d)
(concerning instruction to disregard argument). 
There is no indication in the record that the jury was prejudiced
against appellant by the evidence admitted regarding the conduct of the
co-defendants or that the jury was unable to comply with the judge’s
instructions.  Additionally, it is clear
that the jury was capable of judging each of the defendants based on their own
actions by virtue of the fact that the jury acquitted Michael Thomas despite
the evidence regarding his conduct that appellant now claims was prejudicial to
him.

            Furthermore,
the evidence regarding alleged differences in the amount of force used at most
illustrates the different degrees of culpability among the defendants.  Proof of this nature is not sufficient to
warrant separate trials.  Mendoza v. State, 61 S.W.3d 498, 502
(Tex. App.—San Antonio 2001), aff’d on other grounds,
88 S.W.3d 236 (Tex. Crim. App. 2002); King, 17 S.W.3d at 17.[2]  Accordingly, we find that the trial court did
not err in denying the motion for severance based on the admission of the
physical force evidence.

B.  Inconsistent Defenses

            Appellant
additionally argues that the existence of inconsistent defenses among the
co-defendants necessitated a severance. 
The use of conflicting or inconsistent defenses among co-defendants may
warrant severance if harmful to one of the defendants.  See,
e.g., Silva v. State, 933 S.W.2d 715, 718–19 (Tex. App.—San Antonio 1996,
no pet.).  Although he does not expressly
state the nature of the allegedly inconsistent defenses, appellant is
apparently suggesting that the other two co-defendants were using a defense
based on complainant’s consent to the sexual encounter, whereas he was using a
defense based on the lack of physical force. 
In order to be entitled to a severance based on inconsistent defenses,
the co-defendants’ respective positions must be mutually exclusive in the sense
that to believe the core of one defense, the jury would have to disbelieve the
core of the other.  King, 17 S.W.3d at 17–18 (citing Goode v. State, 740 S.W.2d 453, 455 n.2 (Tex. Crim.
App. 1987), and Silva, 933 S.W.2d at
719).  The defenses of appellant and his
co-defendants were not inconsistent to this degree.  To believe that appellant did not use
physical force against complainant, the jury would not have to disbelieve that
the co-defendants’ sexual encounters were consensual.[3]  Furthermore, as discussed above, the evidence
regarding differences in force at most demonstrates different degrees of
culpability among the defendants.  See Mendoza, 61 S.W.3d at 502; King, 17 S.W.3d at 17.  Accordingly, we find that the trial court did
not err in denying the motion for severance on the basis of inconsistent
defenses.

C.  Admission of Co-defendant’s Statement

1.  Issue & Legal Framework

            Appellant
next contends that a severance should have been granted because the written
statement of Vashawn Thomas was used at trial.  The trial court admitted the statement with
redactions.  Appellant specifically
complains that the obvious redactions in the document allowed the jury to
speculate that appellant was present when complainant was first brought into
the men’s dorm room.  In the statement, Vashawn describes how he saw a group of men escort
complainant through his room and into the adjoining room.  He lists several individuals including “Daunte” (apparently meaning Dante Duplechain),
but at least one of the names is blacked out. 
Appellant’s point is that the implication or suggestion that he may have
been there at an early stage makes him look like a planner or instigator rather
than someone who happened upon events and opportunistically, took part.

            In Bruton v. United States, the Supreme Court
held that in a joint trial a nontestifying
co-defendant’s statement is not admissible if it implicates the defendant in
the charged offense.  391 U.S. 123,
135–37 (1968).  The court found that the
admission of such evidence would violate the defendant’s Sixth Amendment right
to confrontation since the co-defendant could not be cross-examined regarding
the statement.  Id. at
136.  In Richardson v. Marsh, the Supreme Court clarified Bruton, holding
that a co-defendant’s statement may be admissible when a limiting instruction
has been given and the statement has been redacted to eliminate not only the defendant’s
name but any reference to his existence. 
481 U.S. 200, 211
(1987).  In Gray v. Maryland, the court further explained that when the
redaction is accomplished by replacing a name with a blank space, a symbol, or
some other obvious indication of alteration, the statement may still violate a
defendant’s right of confrontation.  523
U.S. 185, 192–93 (1998); see also Wilson
v. State, 948 S.W.2d 21, 29 (Tex. App.—Eastland 1997, pet. ref’d) (discussing circumstances under which courts have
found redactions by replacement to be or not to be Bruton violations).

2.  Waiver

            In
the written motion for severance, appellant contended that “[i]f [appellant] and Co-Defendants are jointly tried, and if
the statements of said Co-Defendants are admitted into evidence and said
Co-Defendants do not testify, [appellant] will be denied rights of
confrontation and cross-examination.” 
During the hearing on the motion for severance, appellant’s counsel
barely mentions the co-defendants’ statements, suggesting only that if one of
the co-defendants chose not to testify, the statements could be
prejudicial.  At the close of the
hearing, the trial court denied the motion based, in part, on the requirement
that the prosecutor redact the defendants’ names from each other’s statements.  Specifically, the court denied severance
based upon the “understanding that we can go over every word to make sure that
any references are totally obliterated” from the sight of the jury.  During trial, when the State moved to admit Vashawn’s statement into evidence, the trial court held a
conference in which defense counsel were given an opportunity to review the
redacted document.  The trial court then
asked, “Is everybody satisfied that everything is redacted?”  Each of the three defense counsel, including
appellant’s counsel, responded, “Yes.”

            The
record is clear that at no point did appellant object to the introduction of
the redacted statement, the method of redaction, or the lack of a specific
limiting instruction.  Although
appellant’s motion for severance complained of Vashawn’s
statement in a general way, appellant waived error by failing to object to
admission of the document after redaction and, in fact, indicating that he was
satisfied with the redaction. 
Accordingly, we find that appellant failed to preserve any of his
arguments regarding Vashawn’s statement.  See
Tex. R. App. P. 33.1 (stating
that in order to preserve a complaint for appellate review, a party must have
made a timely and sufficiently specific objection, request, or motion in the
trial court); Espinosa v. State, 29
S.W.3d 257, 260 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)
(stating that complaints on constitutional grounds must generally be preserved
in the trial court).

3.  Harmless Error

            However,
even if appellant had preserved his arguments, we further find that any error
committed by the trial court in regard to Vashawn’s
statement was harmless.  See 
Harrington v. California, 395 U.S. 250, 254
(1969) (finding Bruton
violation to be harmless error); Chavez
v. State, 6 S.W.3d 56, 62 (Tex. App.—San Antonio 1999, pet. ref’d) (same); Wilson, 948
S.W.2d at 30 (same).  Because appellant’s
complaint touches on the constitutionally protected right of confrontation, we
must examine the potential harm under a heightened standard.  See
Chavez, 6 S.W.3d 62 (analyzing issue under Rule 44.2(a) of the Texas Rules
of Appellate Procedure); Wilson, 948
S.W.2d at 30 (analyzing issue under former Rule 81(b)(2), the predecessor to
44.2(a)).  Rule 44.2(a) states that in
reviewing constitutional error for harm, the court must reverse unless it
determines beyond a reasonable doubt that the error did not contribute to the
conviction or the punishment.  Tex. R. App. P. 44.2(a).  The question is not whether the outcome was
proper or whether there was overwhelming evidence of guilt, but whether the
evidence “dissipates the error’s effect upon the jury’s function in determining
the facts so that it did not contribute to the verdict.”  See
Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim.
App. 1989).  We must isolate the error
and all its effects, then ask whether a rational trier
of fact might have reached a different result if the error and its effects had
not occurred.  See id. at 588.  Generally,
when making this determination, we are to consider: (1) the source of the
error; (2) the nature of the error; (3) whether, or to what extent, it was
emphasized by the State; (4) the probable collateral implications of the error;
and (5) whether declaring the error harmless would encourage the State to repeat
it with impunity.  See id. at 587.   Our focus
must remain, not on the propriety of the outcome of the trial, but on the
integrity of the process that led to the conviction.  Id.

            First,
the statement at issue in this case is not directly incriminatory of the
individual whose name was redacted.  At
most, the statement places the unknown person at the scene of the crime at a
particular time.  Appellant does not deny
being at the scene, nor does he deny having sexual intercourse with complainant
on the night in question.  His sole
objection regarding the statement is that it allowed for the possibility that
he might have been present when complainant was brought into the dorm
room.  However, the testimony of several
witnesses suggested that it was Michael Thomas, not appellant, who accompanied
complainant to the dorm room but was not listed in Vashawn’s
statement as having done so.  No fewer
than five witnesses, including complainant and Michael himself, testified that
Michael was with the group taking complainant to the room.  Appellant points to no evidence suggesting
that he was with that group.  Complainant
herself testified she did not see appellant at that time.  Additionally, Donte
Duplechain testified that at some point after
complainant was already in the dorm room, he, Duplechain,
went and personally told appellant that the complainant was in the room.  This testimony was supported by at least one
other witness who testified that Duplechain stated
that he was going to go tell appellant.

            In
sum, there is no evidence in the record supporting appellant’s contention that
the statement may have led the jury to believe he was with the group that
brought complainant into the dorm room. 
To the contrary, all the evidence points to appellant having arrived in
the room at some later time.  As
discussed above regarding appellant’s sufficiency of the evidence claims, there
was sufficient evidence to sustain appellant’s conviction absent the admission
of the statement.  Accordingly, we find
beyond a reasonable doubt that the alleged error by the trial court did not
contribute to the conviction or the punishment. 
See Tex. R. App. P. 44.2(a). 
Any error on behalf of the trial court in admitting the statement was
harmless.

            Appellant
has failed to meet his burden of showing that clear prejudice resulted from the
trial court’s denial of the motion to sever. 
See King, 17 S.W.3d at 16; Louis, 825 S.W.2d at 757.  Accordingly, we overrule appellant’s second
issue.




            The
judgment of the trial court is affirmed.

 

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

 

Judgment
rendered and Memorandum Opinion filed February 20, 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.

Do
Not Publish — Tex. R. App. P.
47.2(b).

 











            [1]  In Gonzales,
the court considered evidence that the defendant lay on top of the victim as
evidence of the use of physical force.  2
S.W.3d at 415.  Appellant emphasizes the
fact that when asked directly whether appellant used physical force,
complainant stated only that, “He just stuck his penis in me.  It wasn’t a polite way to do it . . . [I]t hurted . . . if that’s considered.”  Complainant’s statement should be analyzed in
the proper context.  Reviewing the
entirety of complainant’s testimony and the evidence in general, there was
sufficient evidence of the use of physical force.





            [2]  We additionally note that if appellant had
been tried separately, the evidence regarding the actions of Michael and Vashawn Thomas may well have been admissible as res gestae of the
offense.  Cf. Rodriguez v. State, 90 S.W.3d 340, 357–58 (Tex. App.—El Paso
2001, pet. ref’d) (holding that because jury would
have heard the same evidence in a separate trial, joinder
could not have affected appellant’s substantial rights).  See
generally Mayes v. State, 816 S.W.2d 79, 86–87 (Tex. Crim.
App. 1991) (discussing admissibility of contextual evidence).  Without knowledge of the events and
circumstances that led up to appellant’s conduct, it would be very difficult
for a jury to accurately judge that conduct. 
See id. at 86.  The conduct did not occur in isolation.  As appellant’s own recounting of the evidence
demonstrates, by the time he assaulted complainant she was in a resigned state
having actively attempted to resist the prior men to no avail.  Under that circumstance, it is not surprising
that the physical force required for appellant to accomplish the rape was not
as great as for the prior assaults. 
However, because we find that the evidence was not prejudicial to
appellant, we need not fully consider the res gestae issue.  See
generally Medellin v. State, 960 S.W.2d 904, 908
(Tex. App.—Amarillo 1997, no pet.) (discussing two-prong test for determining
admissibility of such evidence based on Mayes
and its progeny).





            [3]  Indeed, it could be said that the consent
defense contains within it the lack of physical force defense.  It would be inaccurate to say that a person
was physically forced to perform a sex act but also consented to the act.