

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00211-CR

LYDIA METCALF, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2015-C-0290

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

A Panola County jury determined that Lydia Metcalf was a party to the offense of sexual assault, convicted her of the offense, and assessed a sentence of three years' imprisonment. On appeal, Metcalf argues that (1) the evidence is legally insufficient to support her conviction, (2) the trial court erred in admitting evidence of a subsequent extraneous offense, (3) the trial court erred in denying her motion for mistrial, and (4) the court's jury charge contained error.

We find Metcalf's first issue dispositive of this appeal. Because we conclude that the evidence was legally insufficient to support her conviction, we reverse the trial court's judgment and render a judgment of acquittal.

## I. Factual and Procedural Background

The evidence at trial established that Metcalf's child, Amber,[1] was sexually abused by her stepfather, Allen Metcalf. Allen was convicted of nine counts of sexual assault and three counts of indecency with a child. In this case, the State argued that, on or about December 10, 2010, Metcalf was a party to Allen's penetration of Amber's anus by his sexual organ. Amber, who was twenty-three at the time of trial, testified about the family's history and the sexual abuse she suffered while living with Metcalf and Allen.

Amber stated that Metcalf divorced her biological father when she was nine years old. Thereafter, Metcalf, Amber, and Amber's brother moved in with Allen. When Amber was twelve, the family moved to Houston, and Metcalf and Allen had two other children together. Amber testified that she was taken out of public school and given the duty of caring for house and home

---

[1]We will use a pseudonym to refer to the victim in this case. *See* TEX. R. APP. P. 9.10(a)(3).

while Metcalf worked. According to Amber, Allen began his abuse of her by entering her room and touching her breasts and vagina when she was thirteen years old. Amber also said that Allen soon began vaginally penetrating her with his hands and penis.[2] She testified that she did not tell anyone of Allen's sexual abuse because Allen had threatened to kill her siblings.

Amber testified that the family moved to Carthage, Texas, when she was fourteen and that she continued to do household chores and cook for the family while her mother was working at a daycare facility. She said that Allen soon began coming into her room almost every night for the purpose of sexually assaulting her. Amber testified that, on one occasion during the daytime, Allen took Amber to her mother's room and penetrated her anus with his sexual organ. Amber said that, although she did not know where Metcalf was, she called out to her, but did not receive any response. The incident caused Amber to threaten Allen with revealing the abuse to her mother, but, as a result of Allen's threat to harm her siblings, Amber kept quiet.

Amber testified that, when she was fifteen, she told Metcalf that "Allen was doing bad things and he was a monster."[3] Amber added that, because she was scared, she did not go into any detail and made no allegation of sexual abuse at that time. Metcalf did not believe that Allen did "bad things" or that he was "a monster," and "didn't do anything at that time."[4] When asked, "Did you ever cry out for your mom when Allen came into your room," Amber responded that she had, that Metcalf would stand near the door to the master bedroom, that Metcalf would ask, "What's

---

[2]In her voluntary statement, Metcalf wrote, "I remember one night when we lived in Houston and I woke up at 2:30 AM to find Allen coming back to bed. He said he was just checking on the kids but I thought it was strange."

[4]Testimony from Amber's brother and stepsister established that, during the time in question, Amber had a bad reputation for truthfulness. Amber clarified that she never told her mother that Allen had sex with her until she was twenty-two.

going on," and that Metcalf would walk away after Allen exited her room and reported that she was simply having a nightmare.[5] Amber said she did not cry out again "[b]ecause [she] knew [her] mother was letting it happen."

When Amber was sixteen, she told Metcalf that Allen had "slapped [her] and tried to pull down [her] pants." In a voluntary statement, Metcalf wrote:

> I called Allen to come home and he said that it wasn't anything sexual, that [Amber] was whining about having to use the bathroom so he took her behind a tree and pulled at her shorts. I did not believe him but I had no proof. I made Allen leave our home but let him come back later. . . I gave [Amber] a whistle and a cell phone and told her to call 911 if Allen tried to touch her again.[6]

Amber testified that she received the whistle and cell phone, but was told to call Metcalf if something happened, not the police. Amber did not use the cell phone or whistle.

Amber stated that she did not inform Metcalf of the sexual abuse even though Allen had raped her for a number of years. During cross-examination, Amber testified that she did not know whether Metcalf was present when she was raped because she "was in a locked room," and "[Metcalf] was sleeping in her room when Allen came into [Amber's] room." She said that Metcalf never directed Allen to perform any sexual acts on her.

---

[5]The record does not support an inference that Allen was anally penetrating Amber when Metcalf responded to Amber's cry by coming to the door. Also, Amber did not testify as to how many times Metcalf responded to her cries. On the occasions when Metcalf did not respond, Amber did not offer her opinion of whether Metcalf could hear her.

[6]In a letter to Amber in 2015, Metcalf wrote "I want to first apologize for my actions. I know that I should have done more in the past. . . . I didn't know who to believe I loved both of you and the thought of that even happening was horrifying. . . . What made it more confussing [sic] was he confessed that yes he tried to pull them down but it wasn't sexual. I didn't believe him. . . . I should have been stronger. I should have called the cops."

4

Over objection, the State introduced an extraneous offense which occurred after Allen stopped anally raping Amber. In 2011, Metcalf walked into Amber's room and found Allen on top of her daughter. Amber testified that Allen was touching her vagina with his hands when Metcalf saw them, instructed Allen to get into the master bedroom, and argued with him behind closed doors. Metcalf kicked Allen out of the home. After only four hours of his absence, however, she then pleaded with her daughter to allow Allen to move back home by asking Amber to "think about the kids." Amber testified that she gave in to her mother's plea, allowed Allen to move back in, and was instructed by Metcalf not to tell anyone. When asked, "When did the acts by Allen against you, the anal raping, when did that stop," Amber responded that it was when Metcalf found out in 2011.

With respect to the 2011 incident, Metcalf wrote:

I saw Allen on the bed touching Amber's stomach. I told Allen to leave or I would call the police. . . . When Allen came back he got on his hand and knees apologizing and promising to never touch [Amber] again. . . . When [Amber] was 20 Allen started taking me to our priest and admitting that he had touched [Amber].

Prior to the 2011 incident, however, Amber clarified that she never told Metcalf that Allen had attempted to have sex with her and that she first told Metcalf that Allen had raped her when she was twenty-two.

After hearing this evidence, the jury convicted Metcalf of being a party to anal penetration of Amber by Allen's sexual organ.

## II.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

A person commits the offense of sexual assault if "the person intentionally or knowingly . . . causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." TEX. CODE CRIM. PROC. ANN. art. 22.011. Here, the State's indictment

alleged that Metcalf "intentionally or knowingly cause[d] the penetration of the anus of [Amber] by defendant's sexual organ, without the consent of [Amber]."[7]

Although the indictment did not contain theories of party liability, the State clarified at trial that it sought to hold Metcalf responsible for Allen's conduct as a party, and "it is well-settled that the law of the parties need not be pled in the indictment." *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002). Specifically, the State argued the applicability of Texas Penal Code Section 7.02, subsections (a)(2) and (a)(3), which state:

(a)     A person is criminally responsible for an offense committed by the conduct

of another if:

. . . .

(2)     acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3)     having a legal duty to prevent the commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02(a)(2)–(3) (West 2011). The trial court charged the jury on both theories, alternatively. Because "'[p]arty liability is as much an element of an offense as the enumerated elements prescribed in a statute that defines a particular crime,'. . . it was required to be proven as alleged." *Williams v. State*, 410 S.W.3d 411, 415 (Tex. App.—Texarkana 2013, no pet.) (quoting *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013)).

---

[7]We note that, while the jury charge generally instructed the jury on the law of the parties, the trial court's application paragraph made no reference to the law of the parties. *See Martin v. State*, 252 S.W.3d 809, 814 (Tex. App.—Texarkana 2008, pet. dism'd) ("If the application paragraph of a jury charge does not incorporate a theory recited only in the abstract portion of the charge, a jury cannot convict on that theory.").

Here, a hypothetically correct jury charge under Section 7.02(a)(2) required the State to prove that (1) Metcalf, (2) acting with intent to promote or assist the commission of sexual assault, (3) solicited, encouraged, directed, aided, or attempted to aid (4) the penetration of Amber's anus[8] (5) by the "*defendant's* sexual organ." (Emphasis added). Under Section 7.02(a)(3), the State was required to prove that, (1) having a legal duty to prevent the commission of sexual assault (2) and acting with intent to promote or assist its commission, (3) Metcalf (4) failed to make a reasonable effort to prevent the commission of the offense of sexual assault (5) by penetration of Amber's anus (6) by the "*defendant's* sexual organ." (Emphasis added). We analyze whether the evidence was legally sufficient to convict with these factors in mind.

In our analysis, we recognize that "[t]he trier of fact is the sole judge of the weight and credibility of the evidence." *Bleil v. State*, 496 S.W.3d 194, 202 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014)). "Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder." *Id.* (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)). "Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict." *Id.* (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex.

---

[8]"Texas' sexual assault statute . . . is a conduct-oriented statute that prohibits distinct, yet very specific acts, with each act therein proscribed constituting an independent unit of prosecution." *Mathonican v. State*, 194 S.W.3d 59, 66 (Tex. App.—Texarkana 2006, no pet.); *see Huffman v. State*, 267 S.W.3d 902, 906, 907 (Tex. Crim. App. 2008) (Because "[s]ex offenses are . . . nature of conduct crimes," "different types of conduct are considered to be separate offenses."); *Vick v. State*, 991 S.W.2d 830, 832–33 (Tex. Crim. App. 1999).

Crim. App. 2015). "We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict and defer to that resolution." *Id.*

## III.    Analysis

Metcalf was the defendant in this case. The State's indictment alleged that the "defendant's sexual organ," i.e. Metcalf's sexual organ, penetrated Amber, while the proof at trial established, conclusively, that Metcalf's sexual organ did not penetrate Amber's sexual organ. Therefore, there is a variance between the indictment and the proof at trial. "A 'variance' occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001)). Where "the indictment sets out one distinct offense, but the proof shows an entirely different offense," the variance "is actually a failure of proof." *Id.*

Only material variances lead to a failure of proof, and the identity of the person committing the sexual assault is an essential element of the offense. *See* TEX. PENAL CODE ANN. § 22.011. In any event, we need not decide whether the variance was material because we conclude that the evidence is legally insufficient even when rewriting the indictment by substituting "Allen Metcalf's sexual organ" for the term "defendant's sexual organ." [9] This is because Metcalf argues that there was no evidence that she had the intent to promote or assist in the commission of the sexual assault, and we agree.

---

[9]*See Banos v. State*, No. 13-14-00307-CR, 2016 WL 757792, at *1 (Tex. App.—Corpus Christi Feb. 25, 2016, no pet.) (mem. op., not designated for publication).

9

Evidence is legally sufficient to convict the defendant under Section 7.02(a)(2) where it shows that she acted with intent to promote or assist the commission of the offense and "encourages the commission of the offense either by words or other agreement." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Evidence is legally sufficient to convict the defendant under Section 7.02(a)(3) where it shows that she had "a legal duty to prevent the commission of the offense" and failed to make a reasonable effort to do so with the intent to promote or assist its commission. TEX. PENAL CODE ANN. § 7.02(a)(3).[10] "The difference in the Section 7.02(a)(3) standard and the traditional party definition in Section 7.02(a)(2) is that 'fails to make a reasonable effort to prevent commission' substitutes for the 'solicits, encourages, directs, aids, or attempts to aid' language." *Carson v. State*, 422 S.W.3d 733, 742 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. PENAL CODE ANN. § 7.02(a)(2)–(3)). Accordingly,

> where a person has a legal duty to prevent commission of the offense, but fails to make a reasonable effort to do so, responsibility as a party attaches if the evidence shows that the person acted with intent to promote or assist in the commission of the offense; however, it is not necessary to prove that he or she solicited, encouraged, directed, or aided in the commission of the offense.

*Id.* (citing *Rasberry v. State*, 757 S.W.2d 885, 887 (Tex. App.—Beaumont 1988, pet. ref'd) ("Section 7.02(a)(3) is concerned with situations in which a person may be criminally responsible for the conduct of another by failing to act.")).

Our recitation of Section 7.02(a)(2) and (a)(3) is made with the purpose of explaining that, under either theory of party liability, the State was required to prove that Metcalf acted with intent

---

[10]The Texas Family Code provides, in relevant part, that "a parent . . . has . . . the duty of care, control, protection, and reasonable discipline of the child." TEX. FAM. CODE ANN. § 151.001(a)(2) (West 2014).

10

to promote or assist Allen in committing sexual assault by penetrating Amber's anus with his sexual organ. In order to establish this intent, "the evidence must show that, at the time of the offense, the parties were acting together, each doing some part of the execution of the common purpose." *Cordova*, 698 S.W.2d at 111. While we look to "events before, during, and after the commission of the offense," the agreement to act together to execute a common purpose "must be made before or contemporaneously with the criminal event." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006); *see Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)); *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd); *see also Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977). Circumstantial evidence alone is sufficient to prove one is a party to an offense. *Carson*, 422 S.W.3d at 742 (citing *Powell*, 194 S.W.3d at 506; *Ransom*, 920 S.W.2d at 302; *Cordova*, 698 S.W.2d at 111).

In order to convict Metcalf of the offense alleged, the jury would have to necessarily determine, at a minimum, that Metcalf was aware of the act alleged in the indictment—anal penetration—before determining that she acted with intent to promote or assist its commission. The State generally argues that Metcalf was indicted for sexual assault as a party, that she "had a duty to prevent the commission of this and countless other assaults against her daughter," and that she "was aware of her husband's sexually abusive conduct toward her daughter." Yet, the State's brief falls short of making an attempt to establish, aside from conclusory argument, that Metcalf had the intent to promote or assist in Allen's act of penetrating Amber's anus or that she was aware that such an act was occurring.

11

Arguments that Metcalf could or should have been aware of Allen's indecency with Amber or other acts not alleged in the indictment cannot support a finding that she acted to promote or assist in the commission of anal penetration. While "[a] culpable mental state generally can be established only by inferences from the acts, words, and conduct of the accused," "speculation is not evidence." *Carson*, 422 S.W.3d at 743; *Ex parte Woods*, 296 S.W.3d 587, 611 (Tex. Crim. App. 2009). "Under the *Jackson* test, a jury is permitted to draw reasonable inferences as long as those inferences are supported by the evidence presented at trial." *Woodall v. State*, 376 S.W.3d 134, 139–40 (Tex. App.—Texarkana 2012, no pet.). "A jury is not permitted, though, to reach a conclusion based on mere speculation or factually unsupported inferences." *Id.* (citing *Hooper*, 214 S.W.3d at 15). As we have previously written,

> In *Hooper*, the high court recognized the distinction between an inference and mere speculation:
>
>> [A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

*Id.* (quoting *Hooper*, 214 S.W.3d at 16). "The *Jackson* standard requires this Court to determine whether any necessary inference is reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 139–40 (citing *Hooper*, 214 S.W.3d at 16–17).

Here, testimony establishing that Metcalf failed to respond to Amber's cries after Allen informed her that she was just having nightmares could not support a rational inference that

Metcalf knew about the anal penetration unless the jury determined, from other evidence, that Metcalf did not believe Allen's representations that Amber was having nightmares. Because no other evidence was offered to support this inference, a conclusion that Metcalf knew Amber was crying out because she was being sexually abused, instead of having nightmares, was based on speculation. Amber's statements to Metcalf that Allen was doing bad things, was a monster, and had once tried to pull down her pants were, likewise, insufficient to support a rational inference that Metcalf was aware that Allen was committing the act of anal penetration alleged. Amber further stated that she was not sure whether her mother was present in the home when Allen penetrated her anus with his penis and that Allen did not commit any act of sexual assault after the 2011 incident.[11]

---

[11]Specifically, Amber testified:

> Q.      Okay. And when is the first time you ever told your mother that anything sexual had occurred or anything bad, molestation or sexual, had occurred between you and Allen?
> A.      I told her when I was 15. . . .
> Q.      All right. And you told her that Allen was a monster?
> A.      Yes, sir.
> Q.      And you told her that he did bad things?
> A.      Yes, sir.
> Q.      Did you tell her any more detail than that?
> A.      No, sir.
> Q.      Why not?
> A.      I was scared.
>         . . . .
>
> Q.      At that time, you had already told her about the molestation, correct?
> A.      Yes, ma'am.
> Q.      She left you alone, anyway?
> A.      Yes, ma'am.
> Q.      And you had told him -- did you ever use the words "anal rape"? Did that -- I mean, did those words come to mind?
> A.      No.
>         . . . .
>
> Q.      And what did you tell her?

13

The extraneous 2011 incident, which occurred after the act alleged in the indictment, established that Metcalf then became aware that Allen contacted Amber's vagina with his hand, failed to inform law enforcement at that point, and allowed Allen to move back into the home. However, the agreement to act together to execute a common purpose "must be made before or contemporaneous with the criminal event" alleged. *Miller*, 83 S.W.3d at 314. While the 2011 incident, when coupled with Amber's statements that she cried out for her mother and believed her "mother was letting it happen," could have contributed to the belief that Metcalf may have

A.    That he was a monster and he did bad things.
Q.    You gave no further detail, correct?
A.    No.
Q.    When was the second time you told her?
A.    Sixteen.
Q.    And what did you tell her then?
A.    That Allen was -- slapped me and tried to pull down my pants.
Q.    You never told him [sic] that he tried to penetrate -- using not adult words or fancy words, you never told her that he attempted to have sex with you at all, did you?
A.    I wasn't -- no.
        . . . .

Q.    Okay. Now, you've testified under oath that you told her that he was a monster and he did bad things, correct?
A.    Yes.
Q.    But you never told your mother that he had sex with you, correct?
A.    No, because she didn't ask.
Q.    Well, regardless of the reason, whether she asked or didn't ask, you never told her until you were 22 years old that he had had sex with you, correct?
A.    Yes.

Amber replied affirmatively to the State's question of whether she had told Metcalf about the "molestation." However, the record established that the only thing Amber said about the "molestation" was that Allen was a monster and did bad things. The record does not support an inference that Amber told Metcalf that she was sexually assaulted. Moreover, the hypothetically correct jury charge, as determined by the State's indictment, required the State to prove that Metcalf acted with the intent to promote or assist the act of sexual assault—specifically by anal penetration. *Compare* TEX. PENAL CODE ANN. § 21.11 (West Supp. 2018) *with* TEX. PENAL CODE ANN. § 22.011 (West Supp. 2018). An inference that Metcalf was aware of any act of anal penetration from these record references would require conjecture. Thus, an inference that she acted with the intent to promote or assist anal penetration would be unreasonable based on the cumulative force of the evidence, even when viewed in a light most favorable to the verdict.

14

known or suspected some untoward behavior on Allen's part prior to that incident, Amber testified that she did not inform Metcalf that Allen was sexually abusing her before the anal penetration alleged in the State's indictment occurred.

The basic facts in this case, even when viewed in the light most favorable to the verdict, do not establish that Metcalf had the prior or contemporaneous intent to promote or assist Allen in the commission of the sexual assault alleged in the indictment—anal penetration—beyond a reasonable doubt. Rather, we conclude that they reveal nothing more than a basis for speculation that Metcalf was guilty, as a party, of the offense alleged. Accordingly, we cannot conclude that the evidence is legally sufficient for a rational jury to conclude that Metcalf was a party to the offense under either Section 7.02, subsection (a)(2) or (a)(3), beyond a reasonable doubt, which is this State's highest burden of proof. Therefore, we reverse Metcalf's conviction.

## IV. Metcalf's Conviction Cannot Be Reformed

Next, having determined that the evidence was legally insufficient to support Metcalf's conviction as a party to the offense of sexual assault as alleged, we must now consider whether the conviction should be reformed to reflect a conviction of a lesser-included offense. *See Canida v. State*, 434 S.W.3d 163, 166 (Tex. Crim. App. 2014). We must consider the following two questions when

> deciding whether to reform the judgment to reflect a conviction for a lesser-included offense: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense?

15

*Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014); *see Rabb v. State*, 483 S.W.3d 16, 20–21 (Tex. Crim. App. 2016). "If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required—to avoid the 'unjust' result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense." *Thornton*, 425 S.W.3d at 300 (quoting *Britain v. State*, 412 S.W.3d 518, 521 (Tex. Crim. App. 2013)).

An offense is included within another if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). A person commits the offense of indecency with a child if the person contacts the anus of a child younger than seventeen years of age with intent to arouse or gratify his sexual desire, including through clothing. TEX. PENAL CODE ANN. § 21.11(a)(1), (c) (West Supp. 2018). Here, the act of sexual contact of Amber's anus by Allen's penis would be established by proof of the same or less than all the facts required to establish the act of penetrating Amber's anus. Thus, in circumstances such as the one in this case, indecency with a child is a lesser-included offense of sexual assault. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998). Accordingly, we examine whether the evidence was legally sufficient to support a conviction of Metcalf as a party to indecency with a child. Specifically, we ask whether the evidence established, beyond a reasonable doubt, that, (1) having a legal duty to prevent the commission of indecency with a child (2) and acting with intent to promote or assist its commission, (3) Metcalf (4) failed to make a reasonable effort to prevent the commission of the offense of indecency with a child.

16

The State cites several cases bearing on this matter, which we find easily distinguishable. The first category of cases involve facts that established the appellant's active encouragement of the offense. For example, the State cites to *Simon v. State*, 743 S.W.2d 318, 320 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). There, the court of appeals concluded that the evidence was sufficient to support a wife's conviction as a party to her husband's sexual assault of a child victim, even though she was not present at the time of the sexual assault. *Id.* However, that case presented ample evidence to demonstrate the required intent since the wife told the child she had an open marriage, wished to "gift" a virgin to her husband, commented about her husband's sexual activities and prowess to the child, openly invited the child to engage in sexual contact with her husband during a strip blackjack game, and actually invited the child to have intercourse with her husband. *Id.* at 320–21. The State also cites *Carson v. State*, in which we concluded that the evidence was sufficient to support a mother's conviction for the capital murder of her child where she requested or encouraged her boyfriend to perform an exorcism on her child, was present during a thirty-hour period of horrendous torment of the child, saw a photo of the child showing abuse to her face, and heard terrible cries of the child, but did nothing to aid her. *Carson*, 422 S.W.3d at 743.

In the second category of cases, the evidence suggested that the appellant was an active participant in the commission of the offense. In *Beardsley v. State*, the Texas Court of Criminal Appeals concluded that the evidence was sufficient to convict the appellant as a party to theft of a car where the evidence established that (1) the appellant had twice previously rented the same car that was later stolen; (2) during one of the previous rentals, the car was not returned on time, was

17

kept an additional two weeks, and was mysteriously left in the night with the original keys that were issued to the appellant and his friend; (3) the car was stolen from the same lot a few weeks later; (4) appellant was in possession of the car when it was recovered; (5) the license plates on the car were altered; and (6) the appellant appeared nervous when the police arrived, declined to provide identification when asked, and eventually admitted that he knew the car was stolen. *Beardsley v. State*, 738 S.W.2d 681, 682–84, 687 (Tex. Crim. App. 1987). In *Guevara v. State*, the Texas Court of Criminal Appeals found that the appellant was a participant in the murder of his wife where the evidence showed that he was having an affair, had motive to kill his wife, immediately married his mistress after his wife's death, made several false statements to authorities, told a friend he was researching how to make a silencer before the murder, and had a casing underneath a couch in his apartment that ballistic evidence showed was ejected from the murder weapon. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

In the third category of cases, both unpublished and of no precedential value, the evidence demonstrated the appellants' actual knowledge of criminal acts. In *Sandoval v. State*, No. 14-12-00879-CR, 2014 WL 3870504, at *6 (Tex. App.—Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem. op., not designated for publication), the Fourteenth Court of Appeals concluded that the appellant was a party to felony murder and serious bodily injury to a child, even though she was not present at the time of the offense, where the evidence demonstrated that she left the child in the murderer's care even though the child had sustained numerous obvious injuries while in the murderer's care. *Id.* The evidence also demonstrated that many people had expressed their opinions to the appellant that the victim was being mistreated, that the appellant avoided Child

18

Protective Services when they were investigating the reports of abuse, that the appellant herself made excuses for the victim's injuries, and that the appellant continued to give the murderer unsupervised access to the child. *Id.* Likewise, the El Paso Court of Appeals concluded, in *Perez v. State*, that the appellant was guilty as a party to capital murder where evidence established that the appellant was present during a time when the child suffered seventy impact-point injuries at the hands of the murderer and refused to remove the child from the murderer or take the child to the hospital. *Perez v. State*, No. 08-12-00340-CR, 2015 WL 4940375, at *7–8 (Tex. App.—El Paso, Aug. 19, 2015, no pet.).

Because the evidence does not show, beyond a reasonable doubt, that Metcalf actively encouraged the commission of the offense, was an active participant in its commission, and had actual knowledge of criminal acts committed by Allen, we find the State's cited cases distinguishable.[12] We now turn to our own analysis under Section 7.02(a)(3).

Here, prior to the commission of the offense alleged, Amber told Metcalf that Allen was doing bad things, was a monster, and had once tried to pull down her pants. In her voluntary statement, Metcalf said that she did not believe Allen when "he said that it wasn't anything sexual" and that she kicked him out of the home, though she allowed him to return after providing Amber with a whistle and cell phone. Metcalf's decision to allow Allen back into her home and her failure to call law enforcement constituted sufficient evidence from which a rational jury could conclude

---

[12]By distinguishing these cases, we do not hold that evidence of these categories is required to support a conviction as a party to an offense.

19

that Metcalf was aware of the threat of sexual contact of Amber by Allen, but failed to take reasonable steps to protect her.

However, because "[t]he accused must know that [s]he was assisting in the commission of the offense," the jury was also required to find that, on the occasion that the incident alleged in the indictment occurred, Metcalf acted with the intent to promote or assist Allen in committing indecency with a child, beyond a reasonable doubt. *Rivera v. State*, 507 S.W.3d 844, 856 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (citing *Barnes v. State*, 62 S.W.3d 288, 296 (Tex. App.—Austin 2001, pet. ref'd)). We conclude that a rational jury could not have made such a finding.

Metcalf did not witness and was never told of any act of indecency with Amber committed by Allen prior to the occurrence of the offense for which she was on trial. Although the jury could have concluded that Metcalf was concerned that Allen had sexual desires toward Amber, the allegation that Allen tried to pull down Amber's pants fell short of establishing that Allen succeeded in the act of pulling down Amber's pants or engaged in sexual contact with her. Therefore, the evidence did not demonstrate Metcalf's intent to promote or assist in the commission of indecency with a child, i.e. that she knew she was assisting in the commission of the offense. Therefore, applying the *Jackson* standard does not show that, at the time of the offense, Metcalf and Allen were acting together to execute a common purpose. *See Cordova*, 698 S.W.2d at 111; *see also Morrison v. State*, 608 S.W.2d 233, 234 (Tex. Crim. App. 1980) (reversing

20

appellant's conviction for robbery as a party and rendering an acquittal where "[t]he conclusion that appellant committed some culpable act rest[ed] entirely on conjecture").[13]

Based on the facts of this case, we conclude that the second part of the *Thornton* inquiry is not met. Accordingly, we decline to reform the judgment to reflect a conviction of a lesser-included offense.

## V. Conclusion

We reverse the trial court's judgment and render a judgment of acquittal.

Ralph K. Burgess
Justice

Date Submitted:     July 30, 2018
Date Decided:       October 16, 2018

Publish

---

[13]The evidence suggests that Metcalf was criminally negligent in failing to perceive the risk that Allen was sexually assaulting Amber. Section 6.03(d) of the Penal Code states,

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [she] ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a matter and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (West 2011). Yet, as noted, proof that a defendant is liable as a party to an offense requires proof that the defendant "acted with intent to promote or assist the commission of the offense." TEX. PENAL CODE ANN. § 7.02(a)(2-3) (West 2011). Thus, even if we found that the evidence established that Metcalf acted with criminal negligence, it would not support a lesser-included offense because it fails to establish that she "acted with intent to promote or assist the commission of the offense." *Id.*

21