

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1246-18

**LYDIA METCALF, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### PANOLA COUNTY

HERVEY, J., delivered the opinion of the Court in which KEASLER, RICHARDSON, NEWELL, and WALKER, JJ., joined. KEEL, J., filed a concurring opinion. SLAUGHTER, J., filed a dissenting opinion in which YEARY, J., joined. KELLER, P.J., concurred.

### O P I N I O N

Appellant, Lydia Metcalf, was convicted as a party of second-degree felony sexual

assault based on her husband's anal rape of their then 16-year-old daughter, Amber.[1]

Metcalf was sentenced to three years' imprisonment but was not fined. On appeal, she

---

[1]Amber is the pseudonym adopted by the court of appeals, and we will continue to use it. *Metcalf v. State*, 562 S.W.3d 48, 50 n.1 (Tex. App.—Texarkana 2018).

argued that the evidence is legally insufficient because it did not show that she had the intent to promote or assist her husband's sexual assault of their daughter. The court of appeals agreed and rendered an acquittal.[2] We granted the State's petition for discretionary review asking us to review the decision of the court of appeals.

Because we agree with the lower court, we will affirm its acquittal. Under the hypothetically correct jury charge, the State had to prove that Metcalf, at the time of the offense, intended to promote or assist the commission of the anal penetration alleged in the indictment. But because the evidence does not show that it was Metcalf's conscious objective or desire for Allen to sexually assault Amber, the evidence is insufficient to show that she intended to promote or assist commission of that offense.

## FACTS & PROCEDURAL HISTORY

Metcalf's husband, Allen Metcalf (Allen), sexually assaulted their daughter, Amber, over several years. He pled guilty to twelve counts of second-degree sexual assault[3] and three counts of indecency with a child. Metcalf was indicted on one count of anal-penetration sexual assault that occurred on or about December 2010. She was charged as the primary actor, but the jury was instructed that it could convict her as a

---

[2]The court of appeals did not address Metcalf's three other points of error.

[3]Since this offense was committed, the legislature has added a new statutory subsection under which Allen could have been charged with first-degree felony sexual assault. Act of May 24, 2019, 86th Leg., R.S., ch. 738, § 2, 2019 Tex. Sess. Law Serv. 2049–50 (codified at TEX. PENAL CODE § 22.011(f)(2)) (citing TEX. PENAL CODE § 25.02 (prohibiting sexual intercourse and deviate sexual intercourse with certain family members)).

party under Section 7.02(a)(2) or Section 7.02(a)(3).[4] The jury convicted Metcalf as a party, and she was sentenced to three years' imprisonment.

The abuse began when Amber was 13 years old and lived in Houston. Allen would go into her room at night and sexually abuse her. At first, he would touch her breasts under her clothes. But his behavior escalated. He began to digitally penetrate her, and later, he began engaging in vaginal intercourse with her. In a voluntary statement, Metcalf said that one time she woke up at 2:30 a.m. when they lived in Houston "to find Allen coming back to bed. He said he was just checking on the kids[,] but I thought it was strange." Amber did not tell anyone about the abuse at the time because Allen threatened to hurt her young siblings,[5] and she believed him since he was already sexually abusing her.

---

[4]Section 7.02(a)(2) and (a)(3) of the Penal Code state that,

(a) A person is criminally responsible for an offense committed by the conduct of another if:

\* \* \*

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE § 7.02(a)(2)–(a)(3).

[5]At that time, one of her siblings was almost 5 years old and the other was 4 years old.

When Amber was about 14 years old, her family moved to Carthage. After they moved, Allen went into her room every night except when she was menstruating. He also began to anally rape her. One time when Allen was anally raping her, she called out for her mother.[6] According to Amber, her mother never came to investigate, but Amber also said that she did not know whether her mother was home. Another time she cried out, Amber's two young siblings knocked on the bedroom door to find out what was going on, but Allen told them to go back into the living room and watch a movie. Amber also said that, sometimes when she cried out at night, her mother would stand by her bedroom door and ask, "What's going on?" When Allen left Amber's room, he would tell Metcalf that Amber was having a nightmare. Amber testified that she stopped crying out because she thought that her mother was "letting it happen."

When she was 15 years old, Amber told Metcalf that Allen was a "monster" who was doing "bad things," but she gave no more details, and Metcalf did not ask what she meant. Allen denied doing anything "bad," and Amber thought that Metcalf believed Allen.

When Amber was 16 years old, she came home from jogging with Allen and was crying. Amber told Metcalf that Allen had slapped her and tried to pull down her shorts. Allen admitted to slapping Amber and trying to pull down her shorts, but he denied that it

---

[6]It appears from Amber's testimony that, when she cried out for her mother, she called for her by name but did not say anything else. Amber testified that she did not tell her mother that Allen had been raping her until she was 22 years old.

was sexual. He said that Amber started "whining about having to use the bathroom" a few minutes after they left the house, "so he took her behind a tree and pulled at her shorts." Metcalf did not believe Allen that it was not sexual and kicked him out of the house, but she let him return later that day. She told police that even though she did not believe Allen, she had no proof. Before allowing Allen to return, Metcalf gave Amber a cell phone and a whistle "[i]n case [Allen] did something." According to Amber, Metcalf told Amber to call her, not the police, if something happened. Metcalf also put up a beaded curtain on Amber's bedroom door.

On another occasion when the family was living in Carthage, Metcalf left the house to stay at a motel for an evening. Amber said that she asked to go with her, but her mother would not let her. Amber did not know why, but defense counsel suggested that it was because Metcalf had a migraine that day. Allen raped Amber later that night.

A year or two after the charged offense, in 2011 or 2012, Metcalf walked into Amber's room and saw Allen on top of Amber touching her vagina. Allen and Metcalf argued in their bedroom, and Metcalf kicked him out of the house again. While Allen was gone, he repeatedly called Metcalf begging to return. Metcalf called Amber and asked if Allen could return. She told her that she should think about the kids because they "need their dad."[7] Amber testified that she finally relented and agreed to let him return. Amber

---

[7] In a letter Metcalf later wrote to Amber after the abuse, she said that,

When I saw what I saw ... I kicked him out and he was out for four hours. I felt bad for you that he was doing that to you. I felt angry wanting to call the cops on

and Metcalf slept together in the master bedroom for two weeks while Allen slept on the

couch. Amber testified that Allen never sexually assaulted her again.

In 2013, when Amber was 19 years old, she moved into her great aunt, Emma

Blakeman's, house to work towards earning her General Education Development (GED)

certificate. Blakeman learned of Allen's sexual abuse a couple of years after Amber

moved in with her. Amber was then 22 years old. After learning about the abuse,

Blakeman told Metcalf that the three of them needed to talk to her about "some things."

This was the first time Amber told her mother that Allen began sexually abusing her,

beginning when she was 13 years old. Blakeman and Amber subsequently went to the

Panola County Sheriff's Office and reported the abuse.

## COURT OF APPEALS

The court of appeals first addressed the hypothetically correct jury charge. The

court of appeals concluded that, under Section 7.02(a)(3), the State had to prove that,

> (1) having a legal duty to prevent the commission of sexual assault (2) and
> acting with intent to promote or assist its commission, (3) Metcalf (4) failed
> to make a reasonable effort to prevent the commission of the offense of
> sexual assault (5) by penetration of Amber's anus (6) by the "defendant's

---

him but I also felt bad for [Amber's two young siblings] because that is their dad.
So when he begged to talk to you, and I (sic) And begged to let him back in. I was
filled with different emotions. Judged (By other people) (sic), Angry, hurt,
heartbroken, sad, depressed, etc. I made the worst decision of my life and left it up
to you.

I should have been stronger. I should have called the cops. I should have shown
my anger toward him and just let him have it. I will regret this for the rest of my
life.

sexual organ."[8]

*Metcalf*, 562 S.W.3d at 53. According to the lower court, to prove the intent to promote or assist, the evidence must show that "the parties were acting together, each doing some part of the execution of the common purpose," and the agreement to act "must be made before or contemporaneous with the criminal event." *Id.* at 57. The court of appeals found that the evidence insufficient to prove the "intent to promote or assist" element because it does not show that Metcalf knew about the anal penetration alleged in the indictment, so there could not have been an agreement to act. *Id.* at 60.

Having found the evidence insufficient, the court proceeded to consider whether Metcalf's conviction could be reformed to reflect that she was convicted of indecency with a child. It concluded that the conviction could not be reformed because the evidence is insufficient to show that Metcalf had the intent to promote or assist the commission of indecency with a child.[9] According to the court, Metcalf "did not witness[,] and was never

---

[8]Although the indictment alleges that Metcalf penetrated Amber's anus with her sexual organ, the evidence shows that Allen penetrated Amber's anus with his sexual organ. As the court of appeals correctly pointed out, this raises a variance issue, but like the court of appeals, we need not further address the variance given our disposition of the case. *Metcalf v. State* , 562 S.W.3d 48, 54 (Tex. App.—Texarkana 2018).

[9]The indecency-with-a-child statute states that,

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

told of any act of indecency with Amber committed by Allen[,] prior to the occurrence of the offense for which she was on trial," and "[a]lthough a jury could have concluded that Metcalf was concerned that Allen had sexual desires toward Amber, the allegation that Allen tried to pull down Amber's pants fell short of establishing that Allen succeeded in the act of pulling down Amber's pants or engaged in sexual contact with her." The court of appeals also distinguished cases cited by the State, explaining that the defendants in those cases actively encouraged commission of the offense, had actual knowledge of the offense, or were active participants.[10]

---

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

(B) causes the child to expose the child's anus or any part of the child's genitals.

\* \* \*

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

(d) An offense under Subsection (a)(1) is a felony of the second degree and an offense under Subsection (a)(2) is a felony of the third degree.

TEX. PENAL CODE § 21.11.

[10]*See Guevara v. State*, 152 S.W.3d 45 (Tex. Crim. App. 2004) (the appellant was an active participant in the commission of the offense); *Beardsley v. State*, 738 S.W.2d 681 (Tex.

**DISCRETIONARY REVIEW**

The State argues that the court of appeals reached the wrong result because it considered the evidence in isolation, dismissing its cumulative impact.[11] It agrees that Amber did not tell Metcalf that Allen had been sexually assaulting her until she was 22 years old, but it argues that the evidence is nonetheless sufficient to prove the intent to promote or assist. Specifically, it cites the following evidence,

- Amber testified that she thought that her mother was letting the abuse happen because, sometimes when Allen sexually assaulted her, she would cry out but her mother did not investigate after Allen told her that Amber was having a nightmare;

- Metcalf did not believe Allen that it was not sexual when he tried to pull down Amber's shorts while they were jogging;

- Even though Metcalf did not believe him about the jogging incident and kicked him out of the house, she let him return that same day;

- Metcalf put a beaded curtain on Amber's door, gave her an old cell phone and a whistle, and told her to call her, not the police, if Allen tried "something"; and

- Even after Metcalf walked in on Allen touching Amber's vagina and

---

Crim. App. 1987) (the appellant was an active participant in the commission of the offense); *Sandoval v. State*, No. 14-12-00879-CR, 2014 WL 3870504 (Tex. App.—Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem. op., not designated for publication) (the appellant had actual knowledge of the offense); *Carson v. State*, 422 S.W.3d 733 (Tex. App.—Texarkana 2013, pet. ref'd) (the appellant actively encouraged commission the offense.); *Perez v. State*, No. 08-12-00340-CR, 2015 WL 4940375 (Tex. App.—El Paso Aug. 19, 2015, no pet.) (not designated for publication); (the appellant had actual knowledge of the offense); *Simon v. State*, 743 S.W.2d 318, 320 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (the appellant actively encouraged commission of the offense).

[11]We limit our review to the court of appeals's holding regarding Section 7.02(a)(3) since the State does not challenge the court of appeals's Section 7.02(a)(2) holding.

kicked him out, she allowed him to return, "indicating just how
desperate she was to cater to Allen's wishes to keep him happy."

State's Brief on the Merits at 18–19.

According to the State, "Metcalf had a legal duty to prevent Allen from raping her daughter; but, acting with intent to promote or assist the offense, she failed to make a reasonable effort to prevent the commission of the offense." *Id.* at 19.

## SUFFICIENCY OF THE EVIDENCE

### a. Standard of Review

Evidence is sufficient to support a conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt. When reviewing the sufficiency of the evidence, we consider all the admitted evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The jury is the sole judge of the credibility of a witness's testimony and the weight to assign to that testimony. *Id.* at 319. This means that the jury can believe all, some, or none of a witness's testimony. *Esquivel v. State*, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *Jackson*, 443 U.S. at 319; *see Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper*, 214 S.W.3d at 16. The jury is not allowed to draw conclusions based on speculation even if that speculation is not wholly unreasonable because speculation is not

sufficiently based on the evidence to support a finding of guilt beyond a reasonable doubt. *Id.* "Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.* If the record supports contradictory reasonable inferences, we presume that the jury resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326.

### b. Hypothetically Correct Jury Charge

The sufficiency of the evidence is measured by comparing the evidence produced at trial to "the essential elements of the offense as defined by the hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The law "authorized by the indictment" consists of the statutory elements of the offense as modified by the indictment allegations. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). "Party liability is as much an element of an offense as the enumerated elements prescribed in a statute that defines a particular crime." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013).

### c. Law of Parties

Section 7.02(a)(3) of the Penal Code states that,[12]

---

[12]As we noted earlier, we confine our analysis to the legal-duty theory of party liability under Section 7.02(a)(3) because that is the only part of the court of appeals's holding that the

(a) A person is criminally responsible for an offense committed by the conduct of another if:

\*      \*      \*

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE § 7.02(a)(3). To prove the intent-to-promote-or-assist element, the State must show that it was the defendant's conscious objective or desire for the primary actor to commit the crime.[13] In assaying the record for evidence of intent, we look to "events before, during and after the commission of the offense." *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977). Although we can look to events taking place after commission of the offense, the intent to promote or assist must have been formed contemporaneously with, or before, the crime alleged was committed. *Id.* Circumstantial evidence is as probative as direct evidence when determining whether a person was a party to an offense.[14]

### d. Analysis

*1. The Hypothetically Correct Jury Charge*

---

State challenges.

[13]Section 6.03(a) states that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PENAL CODE § 6.03(a).

[14]*Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g)).

According to the court of appeals, the hypothetically correct jury charge required the State to prove that,[15]

> (1) having a legal duty to prevent the commission of sexual assault[,] (2) and acting with intent to promote or assist its commission, (3) Metcalf[,] (4) failed to make a reasonable effort to prevent the commission of the offense of sexual assault[,] (5) by penetration of Amber's anus[,] (6) by the "defendant's sexual organ."

*Metcalf*, 562 S.W.3d at 53 (emphasis removed).

The State argues that the court of appeals erred because it required it to prove that Metcalf knew about the sexual assault alleged in the indictment. It asserts that Metcalf did not need to know whether Allen penetrated Amber's anus or vagina because those are

---

[15]The jury was charged on the law of parties in the abstract under Section 7.02(a)(2) and (a)(3), but the application part of the jury charge wholly failed to apply the law of parties. That part of the charge states in its entirety that,

### Application of Law to Facts

Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th December, 2010, in Panola County, Texas, the defendant, LYDIA METCALF, did then and there intentionally or knowingly cause the penetration of the anus of A.V.H. by defendant's sexual organ, without the consent of A.V.H., then you will find LYDIA METCALF guilty of sexual assault as charged in the indictment.

If you unanimously agree that the state has proved, beyond a reasonable doubt, all the elements of its case, you must find the defendant "guilty."

If you unanimously agree that the state has failed to prove, beyond a reasonable doubt all elements of its case, you must find the defendant "not guilty."

It is error when the application part of the jury charge wholly fails to apply the law of parties, and the usual *Almanza* factors apply in determining harm. *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012).

only manner-and-means allegations, not essential elements of the offense, and therefore are not included in the hypothetically correct jury charge.

If the phrase "penetration of the anus or sexual organ" describes different manners and means of committing a single offense, as the State argues, those allegations are not incorporated into the hypothetically correct jury charge because they are not essential elements of the offense. But if "penetration of the anus or sexual organ" defines two distinct criminal offenses, the State had to prove that Metcalf intended to promote or assist the anal penetration in the indictment because the anal-penetration allegation is an essential element of the offense.

We have previously decided an identical issue in the aggravated-sexual-assault statute. It controls our analysis here. In *Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010), we had to decide whether the same phrase—"penetration of the anus or sexual organ"—in the aggravated-sexual-assault statute defined one or two offenses. We concluded that the phrase defined two separate offenses, reasoning that aggravated sexual assault is a nature-of-conduct offense, penetration of the anus and penetration of the sexual organ are distinct acts, and the words anus and sexual organ are written in the disjunctive. *Id.* at 848–49; *see Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008) (stating that sex offenses are nature-of-conduct crimes).

This analysis applies with equal force to Section 22.011(a)(1)(A) of the sexual-assault statute. Like the aggravated-sexual-assault statute, sexual assault is a nature-of-

conduct offense, penetration of the anus and sexual organ constitute discrete acts, and the words sexual organ and anus are disjunctive. *See* TEX. PENAL CODE § 22.011(a)(1)(A). Therefore, we conclude that "penetration of the anus or sexual organ" under Section 22.011(a)(1)(A) of the sexual-assault statute are different offenses, not merely two different ways of committing the same offense. Accordingly, those allegations are included in the hypothetically correct jury charge when assessing the sufficiency of the evidence because they are essential elements of their respective offenses.[16]

### 3. The Evidence is Insufficient to Prove that Metcalf Had the Intent to Promote or Assist

The State argues that the court of appeals erred because it did not consider the cumulative impact of all the admitted evidence, instead engaging in a divide-and-conquer analysis. It is true that a reviewing court must consider the cumulative impact of all the inculpatory evidence, but it cannot do so without also discussing individual pieces of evidence. Here, the court of appeals laid out the evidence and then addressed its

---

[16]Although the State must prove that the defendant had the intent to promote or assist the offense alleged (i.e., anal or vaginal penetration), it might be possible to prove that intent even if the defendant did not know how the victim was penetrated. Consider a defendant who acts as a lookout while one of his friends rapes someone inside a nearby room. Maybe the defendant thought that his friend would anally rape the victim, but his friend vaginally raped the victim. Depending on the facts, a rational jury might reasonably infer that the defendant had the intent to promote or assist his friend's vaginal rape even though he did not witness it because it was his conscious objective or desire for his friend to sexually assault the victim in some way.

That reasoning is inapplicable here, however, because the evidence is insufficient to show that Metcalf knew that Allen was sexually assaulting Amber at all, before, or at the time, that the offense was committed. We agree with Judge Keel that the transferred-intent doctrine might apply under different facts. We need not definitively resolve the issue, however, because doing so is unnecessary to our disposition of the case. Here, even if the transferred-intent doctrine is applicable, there is no intent to transfer.

cumulative impact.

Amber testified that the abuse began when she was 13 years old and lived in Houston. Metcalf said in a voluntary statement that one time she woke up at 2:30 a.m. "to find Allen coming back to bed. He said he was just checking on the kids[,] but I thought it was strange." Amber said that she did not tell anyone about the abuse because Allen threatened to hurt her siblings. When she was 14 years old, the family moved to Carthage. That is also when Allen began to anally rape her. Amber called out for her mother a few times when Allen was in her room abusing her, but her mother never came to investigate. Amber testified that sometimes her mother would stand by her door and ask, "What's going on." After Allen left the room, he would tell Metcalf that Amber was having nightmares, and Metcalf never investigated further. On another occasion when Amber cried out, two of her young siblings knocked on the bedroom door, but Allen told them to go back into the living room and watch a movie. Amber testified that she cried out for her mother when Allen committed the charged sexual assault, but she did not know if Metcalf was home. When she was 15 years old, Amber told Metcalf that Allen was a "monster" who was doing "bad things," but Amber never said what she meant, and her mother did not ask. When Amber was 16 years old, Allen slapped her and tried to pull down shorts when they were outside jogging. He admitted to Metcalf that he slapped her and tried to pull down her shorts, but he claimed that it was not sexual. Metcalf did not believe him. She thought that it was sexual and kicked Allen out of the house again. Metcalf let Allen

return to the house that same day and gave Amber a cell phone and a whistle and put up a beaded curtain on Amber's bedroom door. A year or two after the charged offense, Metcalf walked into Amber's room and saw Allen on top of her with his hand on her vagina. Metcalf kicked Allen out of the house, but she eventually allowed him to return. After he returned, Amber and Metcalf slept together in the master bedroom for two weeks, and Allen slept on the couch. Amber testified that Allen never sexually assaulted her again.

According to the court of appeals, testimony establishing that Metcalf failed to respond to Amber's cries after Allen told her that Amber was having nightmares did not support a reasonable inference that "Metcalf knew about the anal penetration" unless other evidence showed that Metcalf did not believe Allen that Amber was having a nightmare. *Metcalf*, 562 S.W.3d at 56. It continued that, "[b]ecause no other evidence was offered to support this inference, a conclusion that Metcalf knew Amber was crying out because she was being sexually abused, instead of having nightmare, was based on speculation." *Id.* The State argues that a jury could have reasonably inferred that Metcalf "saw through Allen's ruse that Amber was just having a nightmare." State's Brief on the Merits at 18. But we agree with the court of appeals.

We draw all reasonable inferences in favor of the verdict. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). But "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or

presumptions." *Hooper*, 214 S.W.3d at 15. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Id.* While "[a] conclusion reached by speculation may not be completely unreasonable," and it might even prove to be true, it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id.*

A rational jury could have believed or disbelieved Amber's testimony that she heard Allen tell Metcalf that Amber was just having nightmares, but there is no evidence from which a rational jury could have reasonably inferred that Metcalf did not believe Allen and that she knew he was actually sexually assaulting Amber. Similarly, while Amber's statements to Metcalf that Allen was a "monster" and was doing "bad things" are incredibly troubling, the State concedes that Amber's comments were too ambiguous to support a reasonable inference that Metcalf knew that Allen was sexually assaulting Amber. We agree. Amber never told Metcalf what she meant, and Metcalf never asked. Without more context, Amber's comments are insufficient to support a reasonable inference that Metcalf knew that Amber meant that Allen was sexually assaulting her. Also, a rational jury could have believed Amber's testimony that she cried out for her mother and that she was unsure whether her mother was home when she cried out, but that evidence does not support a reasonable inference that Metcalf was home, that Metcalf heard Amber, and that she did nothing because she knew that Allen was sexually

assaulting her.

With respect to the jogging incident, the court of appeals found the evidence sufficient to show that Metcalf thought that Allen was sexually interested in Amber, but it concluded that Metcalf's belief does not support a reasonable inference that, since Metcalf thought that it was sexual for Allen, she must have known that Allen had been sexually assaulting Amber or that he would in the future.[17] We agree.

According to the State, while the whistle, cell phone, and beaded curtain were ostensibly to protect Amber, the pitiful "protection" showed that Metcalf knew that Allen was sexually assaulting Amber and that she intended to promote or assist Allen in sexually assaulting Amber. The problem with the State's argument is that, if Metcalf gave Amber the whistle and cell phone and put up the beaded curtain to protect her—even though the measures were woefully inadequate—that tends to show that it was not

---

[17]The jury charge included an instruction that,

> You are instructed to disregard the incident where the defendant entered [the victim]'s bedroom and Allen Metcalf was touching [the victim] for any purpose in considering the guilt or innocence of the defendant for the criminal offense for which the defendant is on trial.

The trial judge said that she included the instruction because Metcalf's failure to take reasonable steps to prevent the commission of the offense, which she had a legal duty to prevent, must have occurred before the later extraneous offense. *Morrison v. State*, 608 S.W.2d 233, 235 (Tex. Crim. App. [Panel Op.] 1980) (stating that "[a]cts committed after the [offense] was completed could not make [Morrison] a party to the offense. The circumstances must prove some culpable act before or during the [offense]."). We note, however, that, while the jury could not convict Metcalf based on her acts after the charged sexual assault was committed, events taking place after the commission of the offense can inform whether a defendant had the intent to promote or assist at the time the crime was committed. *Wygal*, 555 S.W.2d at 468–69.

Metcalf's intent to promote or assist Allen in sexually assaulting Amber. While a rational jury did not have to believe that Metcalf gave Amber the cell phone and whistle and put up the beaded curtain to protect her, there is no other evidence showing why Metcalf gave Amber those items and put the curtain up. In other words, even if the jury disbelieved Metcalf, it could not have reasonably inferred from that disbelief that Metcalf gave Amber the cell phone and whistle because she knew for a fact that Allen was sexually assaulting Amber and that it was her intention to promote or assist in the commission of those sexual assaults, including the charged offense.

Addressing the extraneous incident when Metcalf saw Allen sexually assaulting Amber, the court of appeals concluded that,

> While the 2011 incident, when coupled with Amber's statements that she cried out for her mother and believed her "mother was letting it happen," could have contributed to the belief that Metcalf may have known or suspected some untoward behavior on Allen's part prior to that incident, Amber testified that she did not inform Metcalf that Allen was sexually abusing her before the anal penetration alleged in the State's indictment occurred.

*Metcalf*, 562 S.W.3d at 57.

While it is indisputable that Metcalf knew that Allen was sexually assaulting Amber when she walked into Amber's room and saw Allen with his hand on Amber's vagina a year or two after the charged offense, the evidence does not prove that Metcalf knew that Allen was sexually assaulting Amber at the time of the charged offense, and there is no other evidence showing that it was Metcalf's conscious objective or desire for

Allen to sexually assault Amber, so she could not have intended to promote or assist the commission of that offense. Even after viewing the cumulative impact of all the admitted evidence in the light most favorable to the verdict, we conclude that no rational jury could have reasonably inferred that Metcalf intended to promote or assist the sexual assault of Amber.

### 4. Did the Court of Appeals Conflate the Requirements of Section 7.02(a)(2) and (a)(3)?

The court of appeals said that the evidence is insufficient to show that Metcalf and Allen had an "agreement to act together to execute a common purpose" at the time, or before, the offense was committed. The State takes issue with the court of appeals's reliance on the "execute a common purpose" phrase, arguing that it only applies to the Section 7.02(a)(2), not Section 7.02(a)(3), and that it constituted an additional, unwarranted burden. We agree with the State that the cases relied on by the court of appeals to reach that conclusion are distinguishable because they deal with Section 7.02(a)(2) and that the only burden of proof that the State must meet is the essential elements of the offense set out in Section 7.02(a)(3). The decisions from this Court discussing a "common design" or "common purpose" are cases such as those in which the defendant is charged as a party when he, or a group of people including him, started a fight during which the victim was assaulted or killed. *See, e.g.*, *Binyon v. State*, 545 S.W.2d 448 (Tex. Crim. App. 1976) (evidence sufficient to show the intent to promote or assist because Binyon started the "bar room brawl" that led to the victim's death when a

co-defendant stabbed and killed the victim); *Metcalf*, 562 S.W.3d at 57 (citing *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd) (evidence sufficient to show the intent to promote or assist because Miller drove the Jeep from which the passenger shot and killed the victim)); *Raspberry v. State*, 757 S.W.2d 885 (Tex. App.—Beaumont 1988, pet. ref'd) (evidence sufficient to show the intent to promote or assist because Raspberry started the fight during which a member of his group cut the victim with a knife). Despite the court of appeals's mistake, however, it reached the right result.

**REFORMATION**

The next question is whether Metcalf's sexual assault conviction can be reformed to reflect that she was convicted of a lesser-included offense. A conviction must be reformed if (1) in finding a defendant guilty of the greater offense, the jury necessarily found that the defendant committed the lesser offense, and (2) the evidence is legally sufficient to support the defendant's conviction for the lesser offense. *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014).

The court of appeals considered whether Metcalf's conviction could be reformed to reflect that she was convicted of indecency with a child as a party, but it ultimately rejected that possibility.[18] It reasoned that, like the greater offense, the evidence is

---

[18]Section 21.11 setting out the offense of indecency with a child states that,

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the

insufficient to prove that Metcalf intended to promote or assist Allen's commission of indecency with a child because Metcalf never saw, and no one ever told her, about any act of indecency prior to the anal penetration alleged in the indictment. According to the court of appeals, although "the jury could have concluded that Metcalf was concerned that Allen had sexual desires toward Amber, the allegation that Allen tried to pull down Amber's pants fell short of establishing that Allen succeeded in the act of pulling down Amber's pants or engaged in sexual contact with her." *Metcalf*, 562 S.W.3d at 60. For

person knows the age of the child at the time of the offense, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

(B) causes the child to expose the child's anus or any part of the child's genitals.

\* \* \*

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

(d) An offense under Subsection (a)(1) is a felony of the second degree and an offense under Subsection (a)(2) is a felony of the third degree.

TEX. PENAL CODE § 21.11.

that reason, it concluded, the evidence did not show that Metcalf intended to promote or assist in the commission of indecency with a child. We agree with the court of appeals's analysis.

## CONCLUSION

We hold that the evidence is insufficient to sustain Metcalf's conviction for sexual assault of a child by anal penetration and also that her conviction cannot be reformed to reflect that she was convicted of a lesser-included offense. Therefore, we affirm the court of appeals's judgment rendering an acquittal.

Delivered: April 1, 2020

Publish